[Crim. No. 5239. Fifth Dist. Dec. 30, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS BENNETT, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Lisa Short, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Garrett Beaumont and Linda A. Cabatic, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**THE COURT.\***—Appellant was convicted after jury trial of two counts of robbery (Pen. Code, § 211) with the use of a firearm (Pen. Code, § 12022.5). The trial court sentenced appellant to concurrent five-year upper base terms on both counts and imposed the two-year gun use enhancement on count one.

■  Appellant contends that resentencing is required because the trial court based two aggravating factors on the fact of the gun use and because the record failed to support another factor, the victim's particular vulnerability.

For discussion purposes, we adopt respondent's factual summary: "At approximately 8:15 p.m. on June 7, 1980, appellant Troy Thomas Bennett, Susan Bennett, and William Harris entered the Foodland Market on Marks and Bullard in the City of Fresno .... Appellant and Bennett approached head clerk Duke Reed, and appellant told Reed he had been shortchanged when he was in the market earlier that day .... Reed told appellant there was nothing he could do about it tonight .... Appellant then turned around, produced a sawed-off shotgun, and ordered Reed to open the safe ....

"Bennett accompanied Reed to the safe .... After the safe was opened, Bennett ordered Reed to put the money in the Foodland shopping bag held in her hand .... Meanwhile, appellant pointed the shotgun at Melinda Mastores, a checker in the store, and told her to get the money out of the cash register drawer .... Appellant also waved the shotgun about, ordering people in the store to take the money out of their purses .... After the appellant and Bennett took the money from Melinda, Duke, and the people in line at the checkstand, they ran out the door, with Harris walking out very casually behind them. The three then drove away ....

"After a high-speed chase by law enforcement officials, the appellant, Susan Bennett, and William Harris were apprehended ....

"Appellant admitted to helping rob the Foodland Market and testified that he was armed at the time .... Appellant also testified that

---

*Before Zenovich, Acting P. J., Andreen, J., and Stone (C. V.), J.†

†Assigned by the Chairperson of the Judicial Council.

prior to entering the market, he had been drinking and was under the influence of Phencyclidine (PCP or angel dust) . . . ."

The sentencing hearing occurred October 9, 1980. The judge had read a probation officer's report (RPO) dated October 2, 1980. The RPO noted, in mitigation, that appellant had admitted culpability shortly after his arrest. The RPO cited these aggravating factors: "These offenses involved the threat of great bodily harm. The defendant obviously occupied a position of leadership and was personally armed with an illegal weapon during the commission of this offense. Also, it appears the defendant and co-defendant Susan Burris [also known as Susan Bennett] planned this crime (Rule 421, Section 1, Subsections, 1, 2, 5 and 8).

"The defendant has engaged in a pattern of violent conduct which indicates he is a serious danger to society. His prior convictions for crimes as a juvenile and adult are significant and are becoming increasingly serious. The defendant has served a prior prison term for Rape and had felony warrants outstanding for his arrest for an alleged robbery, two counts of aggravated assault and escape when he committed the instant offense. It also appears the defendant's prior performance on probation as a juvenile was less than satisfactory (Rule 421, Section b, Subsections 1, 2, 3 and 5)."

After hearing argument on the base term, the judge imposed the upper term and stated: "The reasons I have chosen the upper term is, one, that the crime involved the threat of great bodily harm. Two, that the victims were particularly vulnerable, being clerks in the market. That the Defendant was convicted of two counts of robbery, for which consecutive sentences could be imposed, but which the Court intends to impose concurrent sentences. That the crime involved the taking of property by violence, and that the Defendant has engaged in a previous pattern of violent conduct, which indicates he's a serious menace to the society."

The judge went on to impose the gun use enhancement, "the Court not using that as a ground for selection of the upper term. . . . ."

### VULNERABILITY

Rule 421(a)(3), California Rules of Court, cites as an aggravating factor relating to the crime that "The victim was particularly vulner-

able." This phrase has generated substantial litigation. In *People* v. *Ramos* (1980) 106 Cal.App.3d 591, 606-608 [165 Cal.Rptr. 179], this court upheld the trial court's finding of particular vulnerability where the defendant and two others assaulted and robbed the victim in his own home. The victim was isolated and not subject to help from passersby. We observed: "Rather than merely focus on the victim's physical traits, it was quite proper to consider the total milieu in which the commission of the crime occurred." (*Id.*, at p. 607.)

In the instant case, appellant argues that neither the victim's personal characteristics nor the setting of the crime supports a finding of particular vulnerability. Respondent counters that the finding rests on evidence that three persons were trying to rob the market, that appellant, while under the influence of alcohol and drugs, was screaming and brandishing a sawed-off shotgun.

We agree with appellant. Preliminarily, we note that the sentencing judge did not undertake a detailed exegesis of the issue. Rather, he appeared to reason that the victims were particularly vulnerable simply because they were market clerks. A market clerk might be statistically more likely to suffer a robbery than would a homeowner, for example, because there are more commercial than residential robberies. However, this fact alone does not establish particular vulnerability within the meaning of the rule.

We can picture situations where a market clerk is particularly vulnerable, for example, where he is alone, in the wee hours of the morning, at an isolated convenience market when the robbery occurs. In the instant case, the robbery occurred at a supermarket, located in a shopping center, at 8:15 p.m., in June, with 5 store employees and 40 or 50 customers present. The total milieu rebutted a finding of particular vulnerability.[1]

### THREAT OF GREAT BODILY INJURY

Rule 421(a)(1), California Rules of Court, cites as an aggravating factor that: "The crime involved great violence, great bodily harm,

---

[1]This is not to minimize an extremely dangerous, terrifying situation produced by a robbery by an agitated person brandishing a sawed-off shotgun. However, the fact of the gun use could not be used to show vulnerability because a gun use enhancement was imposed.

threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness or callousness, whether or not charged or chargeable as an enhancement under section 12022.7." The judge found that the crime involved a threat of great bodily harm.

Appellant argues that since there were no direct verbal threats (see, e.g., *People* v. *Edwards* (1981) 117 Cal.App.3d 436, 445 [172 Cal.Rptr. 652]) or other evidence of a threat of great bodily harm apart from the gun use itself, an improper dual use of facts occurred. Respondent counters that appellant grabbed the box boy and a customer who were trying to leave the store and pointed the gun at the victims. The former fact does not comprise a threat of great bodily harm and the latter fact was part and parcel of the gun use itself. (*People* v. *Smith* (1980) 101 Cal.App.3d 964 [161 Cal.Rptr. 787].)

We agree with appellant that an improper dual use occurred. (See also *People* v. *Roberson* (1978) 81 Cal.App.3d 890, 893 [146 Cal.Rptr. 777].)

## Taking by Violence

The judge found that "the crime involved the taking of property by violence." Appellant argues again that this finding could only be based on the gun use, that "there was no surplusage whatsoever in this case of violence. ..." We agree. The taking of property from the victims was effected through the gun use. The technical batteries which occurred when appellant grabbed the box boy and a female customer to prevent them from leaving did not show a violent taking of property.

## Disposition

The judge was aware of the dual use prohibition and recited that he had not relied on the gun use to impose the upper term. But the record suggests that the judge construed the dual use rule too narrowly because two of the five aggravating factors could only have been based factually on the gun use. Also, while supermarkets may be statistically popular targets, this alone does not show particular vulnerability.

Appellant has not challenged the remaining two aggravating factors cited by the judge, which are supported by the record. Nevertheless, when three of the five factors have fallen by the wayside, remand for

resentencing is appropriate because we cannot say that the result is a foregone conclusion.

The matter is remanded for resentencing in accordance with the principles expressed herein. In all other respects, it is affirmed.