[Crim. Nos. 6377, 6392. Fifth Dist. Aug. 29, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
EOLDEST YOUNG, JR., Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Parts II and III are not published, as they do not meet the standards for publication contained in rule 976(b), California Rules of Court.

## COUNSEL

Henry Eavey and Quin Denvir, State Public Defender, under appointments by the Court of Appeal, and Mark L. Christiansen, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian and John K. Van de Kamp, Attorneys General, Robert H. Philibosian and Daniel J. Kremer, Chief Assistant Attorneys General, Arnold O. Overoye, Assistant Attorney General, Charles P. Just and Clayton S. Tanaka, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ANDREEN, Acting P. J.**—On this court's motion the defendant's two appeals have been consolidated.

On March 10, 1982, defendant was convicted by jury trial of a violation of petty theft with a prior. (Pen. Code, § 666.)[2]

On April 16 of the same year, defendant was convicted by jury trial of count II, deterring and/or resisting a police officer (Dennis Mairel) in the performance of his duty (§ 69), with a further allegation of personal use of a firearm (§ 12022.5); count III, assault with a deadly weapon upon a peace officer (§ 245, subd. (b)), with a further allegation of personal use of a firearm (§ 12022.5); and count V, resisting arrest (§ 148). The defendant had earlier pleaded nolo contendere to the charge of a felon in possession of a concealable firearm (§ 12021), the charge in count VIII of the information.

---

[2]All section references are to the Penal Code unless otherwise noted.

On April 21, defendant was sentenced to a middle term of two years in prison on the petty theft conviction.

On May 17, a sentencing and probation hearing was held for defendant's April 16 conviction. Defendant was sentenced as follows.

1. On count II, defendant was sentenced to the upper term of three years in state prison plus a two-year enhancement for the firearm use (§ 12022.5). The sentence was stayed pursuant to section 654.

2. On count III, defendant was sentenced to the upper-base term of five years plus a two-year enhancement for the firearm use.

3. On count VIII, defendant was sentenced to one-third the middle term for eight months in state prison.

4. On count V, defendant was sentenced to a one-year term in county jail to be served consecutively. The abstract of judgment does not record this sentence.

5. The minute order and the abstract of judgment indicate that defendant's March 10 conviction of petty theft should run consecutively to defendant's April 16 conviction.

The total term to which the defendant was sentenced was eight years, four months.

## I. Facts

### A. Petty Theft

Defendant shoplifted a bottle of whiskey from Long's Drug Store. Although confronted in the parking lot by store employees, he made an escape.

### B. Other Charges

Defendant rang in the New Year by firing a gun into the air at a New Year's Eve party. Thereupon, on January 1, 1982, at approximately 5 a.m., he left his sister's house where he had been drinking. He took the gun with him. When Police Officer Mairel sought to have defendant pull over for a burned out license plate lamp, defendant ignored him and attempted to lose him by driving at a high rate of speed (approximately 75 miles per hour). The police officer pursued. At one point, defendant ran his car over a curb and collided with a fence and bushes. At another point, after defendant's

speed had decreased (10-15 miles per hour) due to the damage his car sustained in the collision, defendant swerved his car into the police officer's vehicle as the officer attempted to pass and block the defendant.

Eventually, defendant further decreased his speed, jumped from the moving car and ran away. The police officer continued the chase on foot. Defendant pulled out the handgun, shot twice into the ground and shot at least three more times directly at the officer. The police officer took evasive action to avoid being shot. He eventually managed to overtake and apprehend the defendant with the aid of another officer arriving on the scene, Officer Calhoun.

## II. Was a Denial of Probation on the Petty Theft Charge an Abuse of Discretion?[3]

## III. Did the Abstract of Judgment and Minute Order Erroneously Impose a Consecutive Sentence for Defendant's Prior Petty Theft Conviction?[*]

## IV. Did the Trial Court Use Improper Factors in Sentencing Defendant to the Upper Term for Assault With a Deadly Weapon?

Defendant contends the trial court relied on improper factors in imposing the aggravated term for his assault conviction. The five allegedly erroneous factors are (1) firing at a police officer in the performance of his duties, (2) threat of great bodily harm and possible death to the police officer, (3) the extremely serious nature of the offense, (4) attempting at all costs to avoid arrest and (5) the risk to life for a police officer on the job. All except factor (4) may be dealt with summarily.

### A. Firing at Officer

■ Defendant contends firing on a police officer in the performance of his duties (the first factor used in aggravation) is an element of the assault offense and may not be used to impose the upper term. (Cal. Rules of Court, rule 441(d).)

The actual firing at Officer Mairel was not necessary in order to constitute an assault with a deadly weapon. See *People* v. *Thompson* (1949) 93 Cal.App.2d 780 [209 P.2d 819], where a conviction of assault was upheld. Thompson had pointed his loaded revolver between two officers (and down-

---

[3]See footnote 1, *ante.*
[*]See footnote 1, *ante.*

ward) and demanded the officers raise their hands. It was considered significant that although he did not point the gun directly at either officer, he was in a position to do so instantly. His conviction of assault with a deadly weapon was affirmed.

However, in the instant case, the court included a two-year enhancement for the firearm use (§ 12022.5). Reliance on the firing on the officer for aggravation purposes is a dual use of facts, prohibited by section 1170, subdivision (b).

### B. THREAT OF GREAT BODILY HARM

The second factor was the threat of great bodily harm to the police officer in the performance of his duties. The defendant fired directly at the officer at least three times. It is argued that a threat of great bodily harm is an element of section 245, subdivision (b). We need not address the issue since the aggravating factor again depends upon the use of a gun. This is an improper dual use of facts. (*People* v. *Bennett* (1981) 128 Cal.App.3d 354, 358-359 [180 Cal.Rptr. 1].)

The People suggest that there was an additional threat of great bodily harm when defendant used his car to run into Officer Mairel's car. The record of the sentencing hearing, however, indicates the only threat contemplated by the trial court was from defendant's use of the handgun.

### C. SERIOUSNESS OF OFFENSE

■ The third factor relied on by the trial court was the "extreme serious nature of the offense." Defendant claims this factor is an inherent element of assault with a deadly weapon. Although technically the fact of extreme seriousness is not an element of assault (§ 245, subd. (b)), the factor should not be used to aggravate the assault term. Factors may be used to aggravate when they have the effect of "making the offense distinctively worse than the ordinary." (*People* v. *Moreno* (1982) 128 Cal.App.3d 103, 110 [179 Cal.Rptr. 879].) To say an assault with a deadly weapon is an extremely serious offense merely states the obvious and does not have an effect of making the offense distinctly worse. The trial court's use of factor (3) in aggravating defendant's term was improper.

### D. OCCUPATIONAL HAZARD

■ The trial court's fifth stated factor in aggravation was police officers risk their lives on the job in certain situations. This factor is not proper. While the position of a policeman might bear on or relate to the victim's

vulnerability (Cal. Rules of Court, rule 421(a)(3)), being a policeman is an element of the assault in this case and should not be used to aggravate the offense. (Cal. Rules of Court, rule 441(d).)

### E. Multiple Punishment

■ Finally defendant contends that factor (4), attempting to avoid arrest at all costs, is improper because the fact underlies defendant's convictions for resisting arrest against Officers Mairel and Calhoun (§ 148) and resisting Officer Mairel with force (§ 69). He argues that consideration of the facts underlying a count for which punishment was stayed pursuant to section 654 is tantamount to punishment for such count. The section 69 violation was stayed pursuant to section 654. Insofar as the section 148 violation was grounded on actions against Officer Mairel, it should have received the same treatment.[5]

We believe that the sections 69 and 148 violations may be considered as "circumstances," as that word is used in section 1170, subdivision (b), which provides in pertinent part: "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime."[6] The fact that the sections 69, 148 and 245, subdivision (b) violations in reference to Officer Mairel arose out of indivisible conduct toward the principal objective of avoiding arrest should not mean that the factor of avoiding arrest at all costs may not be used to aggravate the assault with a deadly weapon upon a peace officer charge (§ 245, subd. (b)). Logically, a charge such as the section 69 violation, which, under the circumstances of this case may not be separately punished under section 654, should stand in no different posture than an uncharged section 69 or 148 violation. Had those charges not been filed, the court could have considered the actions to avoid arrest at all costs as an aggravating factor.[7] They should be no less available because they have been proved beyond a reasonable doubt.

---

[5]Defendant suffered no additional imprisonment by reason of his conviction of sections 69 and 148. The section 69 violation was stayed pursuant to section 654. Although defendant was sentenced to one year in county jail for the section 148 violation, to be served consecutively, the abstract of judgment does not reflect this sentence. The Attorney General makes no issue of this by cross-appeal or otherwise. We therefore treat the case as if no sentence was imposed for the section 148 violation.

[6]Also see California Rules of Court, rule 421(a) which provides: "Facts relating to the crime . . ." should be considered as a circumstance in aggravation.

[7]A sentencing court is not confined to a consideration of the bare elements of the crime in selecting the appropriate sentence.

*People v. Cheatham* (1979) 23 Cal.3d 829, 835 [153 Cal.Rptr. 585, 591 P.2d 1237], quoted with approval the Judicial Council of California's Annual Report (1978) page 16:

There was no multiple punishment for a single act. The punishment was for a violation of section 245, subdivision (b), only. When making its determination as to the appropriate punishment, the court should be able to consider all transactionally related conduct as circumstances in aggravation. To foreclose consideration of such conduct is more than was intended by enactment of section 654. While we are not aware of any case addressing the issue of whether facts underlying a conviction stayed under the mandate of section 654 can be used to aggravate the unstayed count, two analogies appear.

In *People* v. *Williams* (1983) 140 Cal.App.3d 445 [189 Cal.Rptr. 497], we held that the addition of a section 667.5 enhancement for a prior prison term was not constitutionally infirm, since the defendant was not being punished for the prior offense, but for the subsequent one. The section merely provides for more severe punishment for those who have proven themselves immune to correction through lesser punishment. (See generally *In re McVickers* (1946) 29 Cal.2d 264 [176 P.2d 40].) The analogy to the present case is clear. As the severity of the punishment may vary on the basis of prior criminality without violating ex post facto laws, it may also vary on the basis of circumstances surrounding the commission of the crime without violating the proscription against multiple punishment. (§ 654.)

The other analogy is *People* v. *Harvey* (1979) 25 Cal.3d 754, 758 [159 Cal.Rptr. 696, 602 P.2d 396]. Our Supreme Court held that a sentencing court could not properly consider any of the facts underlying a dismissed count for purposes of aggravating a defendant's sentence because of the understanding that the defendant would suffer no adverse sentencing consequences by reason of the facts underlying and solely pertaining to a count which was dismissed pursuant to a plea bargain. The court, however, distinguished and approved *People* v. *Guevara* (1979) 88 Cal.App.3d 86, 92-94 [151 Cal.Rptr. 511]. There, multiple weapon allegations of possession and use and a related kidnaping were dismissed pursuant to a plea bargain, but were held to be circumstances which could be used to aggravate a remaining charge of kidnap because they were transactionally related.

If consideration of the facts of a particular crime is, as defendant implies, tantamount to punishment for that count, then a court could never consider the facts of dismissed or uncharged counts, since this would punish the defendant for crimes for which he was not convicted. In approving of the use of transactionally related criminal acts, our Supreme Court presupposed

---

" '. . . The phrase, "circumstances in aggravation or mitigation of the crime" necessarily alludes to extrinsic facts.' . . ." We applied *Cheatham* reasoning to circumstances relating to the commission of the crime in *People* v. *Betterton* (1979) 93 Cal.App.3d 406, 415 [155 Cal.Rptr. 537].

that such use is not punishment on the dismissed transactionally related crimes, but merely a consideration of the circumstances surrounding the crime of which the defendant was convicted.

## F. CONCLUSION

We are unable to state whether the trial court would have imposed the upper term had it been advised as to which factors were appropriate. It is therefore necessary to remand.

## G. CLERICAL ERROR

Parenthetically, we note that although a section 12022.5 enhancement was pleaded and proved, the third amended abstract of judgment erroneously refers to section 12022.3. This should be corrected.

## V. DISPOSITION

The cause is remanded with directions to set aside the sentence and to resentence defendant and to correct the abstract of judgment. Otherwise, the judgment is affirmed.

Woolpert, J., and Martin, J., concurred.