[No. E006207. Fourth Dist., Div. Two. May 7, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
GEORGE JOHN GOLLIVER, JR., Defendant and Appellant.

1614

**Counsel**

Carmela F. Simoncini, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, and Steven H. Ziegen, Deputy Attorney General, for Plaintiff and Respondent.

**Opinion**

**HOLLENHORST, Acting P. J.**—Defendant appeals from the judgment entered by the trial court upon his conviction by plea on one count of involuntary manslaughter. (Pen. Code, § 192, subd. (b).)[1]

---

[1] Unless otherwise indicated, all statutory section-number citations refer to the Penal Code.

## FACTS

Late one evening, a Jorge Barrasa heard a woman yelling from a nearby wooded area. Barrasa did not understand English, but he could tell that the woman was calling for help. Barrasa drove to the wooded area and, upon arriving, observed a car speeding away from the scene of the disturbance. Barrasa drove into a tree lane where he saw a young woman walking toward him. The young woman then dropped to her knees.

Barrasa could see that the woman's face had been bloodied. He left to enlist the assistance of his friend, Hector Gomez. The two men summoned law enforcement personnel and paramedics and then returned to the wooded area. Upon reaching the woods, the woman began running toward the two men. The woman told Barrasa and Gomez that "someone had tried to kill her, someone tried to run over her . . . ." Paramedics arrived shortly thereafter.

Early the following morning, the woman died. She had suffered multiple head wounds, serious hematomas and severe liver lacerations. It was theorized that something heavy, such as an automobile, had fallen on her.

Witnesses revealed to law enforcement investigators that the woman had last been seen in the company of defendant. The investigators interviewed defendant's girlfriend, who told the investigators that defendant had returned home late on the night in question with a bite mark on his thumb and scratches on his face. The girlfriend stated that defendant had explained his minor injuries by telling her that he had been in a fight with another man and that he might have run over that other man with his car as he was trying to leave the scene of the fight.

The investigators then interviewed defendant. At first, defendant denied having been with the woman and repeated his earlier statements that he had been injured in a fight with another man. Later, however, defendant finally admitted that he had accidentally run over the woman. He explained that he had had a fight with the woman and that the two of them had fallen from his car; he got back in his car and found that it was stuck in the dirt; he managed to free his car and drove away, unaware that he had run over the woman.

An information was filed against defendant, charging him with one count of murder (§ 187, subd. (a)) and one count of hit and run with injury (Veh. Code, § 20001). Defendant was arraigned on the information and pled not guilty to both charges. On the date set for his pretrial hearing, defendant withdrew his not guilty plea and entered a plea of guilty to a single charge

of involuntary manslaughter (§ 192, subd. (b)) set forth in an amended information as a lesser related offense of the original murder charge. The amended information and related guilty plea were the product of a negotiated plea bargain in which the district attorney had agreed to reduce the murder charge to involuntary manslaughter and dismiss the hit-and-run charge, with no agreement as to sentence, in exchange for a guilty plea.

At the sentencing hearing, the trial court denied probation and sentenced defendant to a middle prison term of three years. In denying probation, the trial court stated: "The Court is denying probation on the grounds of the nature and seriousness of the offense as such that probation would not be appropriate. [¶] And the defendant's prior record is of significant nature, which would indicate that the defendant is not amenable to probation supervision. [¶] So probation is denied."

On appeal, defendant raised only one issue: The trial court abused its discretion in denying probation in that the reasons stated by the trial court for that denial do not support such a sentencing decision. We conclude that the trial court properly exercised its discretion and affirm the judgment in all respects.

### DISCUSSION

 ██ As defendant readily concedes, the trial court enjoys broad discretion in making its sentencing choices, and these choices will be affirmed unless there is a clear showing that the trial court's actions were arbitrary or irrational. (*People* v. *Giminez* (1975) 14 Cal.3d 68, 72 [120 Cal.Rptr. 577, 534 P.2d 65]; *People* v. *Marquez* (1983) 143 Cal.App.3d 797, 803 [192 Cal.Rptr. 193].)[2] Nevertheless, as is also correctly noted by defendant, the decision to imprison a defendant is a sentencing choice which requires that the trial court understand the nature of its discretionary power (*ibid.*) and that the trial court give a statement of reasons for its choice pursuant to rule 439(d) of the California Rules of Court. (*People* v. *Romero* (1985) 167 Cal.App.3d 1148, 1151 [213 Cal.Rptr. 774]; see § 1170, subd. (c).)[3] Defendant contends that both of the reasons given by the trial court for denying probation ("nature and seriousness of the offense" and

---

[2] Rule 405(f) of the California Rules of Court defines "sentence choice" to mean: ". . . the selection of any disposition of the case which does not amount to a dismissal, acquittal, or grant of a new trial. It includes the granting of probation and the suspension of imposition or execution of a sentence." Thus, while a decision to imprison a defendant would be a "sentence choice" under rule 405(f), the concomitant "decision" to deny probation to that defendant (which is, of course, actually nothing more than a necessary result of the decision to imprison rather than a separate decision) is not such a "sentence choice." (See *People* v. *Mobley* (1983) 139 Cal.App.3d 320, 324 [188 Cal.Rptr. 583].)

[3] Rules of the California Rules of Court are hereinafter cited by rule number only.

"prior record is of significant nature") are improper and, thus, that the trial court's decision to deny probation was an arbitrary or irrational abuse of discretion. Defendant is in error.

The criteria affecting a trial court's decision to grant or deny probation to a defendant are set forth in rule 414. Among these criteria are those set forth in rule 414(c)(1)—"The nature, seriousness and circumstances of the crime."—and in rule 414(d)(1)—"Prior record of criminal conduct, . . ." ■ Thus, the trial court's stated reasons for denying probation were nothing more than approximations of portions of the language of rule 414 itself. As a general proposition, there is nothing wrong with giving reasons for a sentencing choice in this manner: "While the reviewing court has found fault with the trial courts who merely incorporate probation reports or written material instead of stating its reasons on the record [citations] and have criticized trial courts which merely recite the numbers of the relevant rules of court [citation], we have been cited no case which finds error when a trial court uses the language of the rules in reciting its reasons for the sentencing choice." (*People* v. *Huber* (1986) 181 Cal.App.3d 601, 628-629 [227 Cal.Rptr. 113].)[4] In this case, however, defendant is challenging the particular reasons articulated by the trial court as a basis for its sentencing choice rather than challenging the particular manner in which the trial court stated those reasons.

■ Further, in reviewing defendant's contentions, it is essential to focus on the fact that defendant is challenging the reasons given by the trial court for its "sentence choice" (as defined in rule 405(f)). This focus is essential because the statutory provision which requires reasons for sentence choices, section 1170, subdivision (c), requires *only* that the trial court give *reasons* for that choice. This is in contrast with the statutory provision governing a trial court's decision to impose an upper or lower term of imprisonment, section 1170, subdivision (b), which requires that a trial court state *facts and reasons* for such a sentencing decision. (*People* v. *Prothro* (1989) 215 Cal.App.3d 166, 170-171 [263 Cal.Rptr. 433].) These statutory provisions each find application in the sentencing rules. Section 1170, subdivision (b), is reflected in rules 421, 423 and (by indirect reference) 425(b). Section 1170, subdivision (c), on the other hand, is reflected in rule 439(d).

Our review of defendant's contentions is undertaken with all of the above in mind.

---

[4] *Huber* was addressing the trial court's sentencing decision with regard to imposing consecutive or concurrent terms for a conviction on multiple counts. (Rule 425.) However, *Huber*'s general observation is, if anything, even more applicable to the trial court's initial sentencing choice as to the imprisonment/probation issue. (See discussion in main text.)

*A. "Nature And Seriousness of the Offense."*

■ Defendant contends that the "nature and seriousness of the offense" is an inadequate reason for imposing imprisonment and has cited four cases as support for this contention. Defendant's reliance on the cited cases is misplaced:

(1) One of the four cases defendant cites is *People* v. *Smith* (1984) 155 Cal.App.3d 539, at pages 545-546 [202 Cal.Rptr. 259]. *Smith,* however, was not a case involving a sentencing choice under rule 439(d) and section 1170, subdivision (c). Rather, *Smith* involved a trial court's decision to impose a consecutive sentence. In concluding that the trial court's reliance on "the nature of the crimes" was improper, the Court of Appeal expressly referred to rules 425(b) and 421—*not* to rule 439(d). Rules 425(b) and 421, in turn, call section 1170, subdivision (b) ("facts and reasons") into play—*not* section 1170, subdivision (c) ("reasons"). *Smith* does not provide authority for defendant's contention.

(2) The second of the four cases cited by defendant is *People* v. *Salazar* (1980) 108 Cal.App.3d 992, at page 1000 [167 Cal.Rptr. 38]. This citation does contain the following brief discussion of the issue before us: "The lower court found defendant to be an unfit subject for probation, stating that it had considered the nature of the crime, the probation officer's report, and the diagnostic report. These references are insufficient to constitute the requisite statement of reasons." The authorities expressly relied on by *Salazar* for the above conclusion, however, do not support that conclusion as to the "nature of the crime" reason, to wit:

(a) *People* v. *Hernandez* (1979) 100 Cal.App.3d 637, at page 643 [160 Cal.Rptr. 607]. *Hernandez* concerned the statement given by the trial court in support of its sentencing decision to impose an upper term—a sentencing decision calling section 1170, subdivision (b)—*not* section 1170, subdivision (c)—into play. Further, *Hernandez* addressed the trial court's improper incorporation by reference of a third party report as the reason for the sentencing decision, it did not address the adequacy of any reasons that were independently stated by the trial court.

(b) *People* v. *Arceo* (1979) 95 Cal.App.3d 117, at page 121 [157 Cal.Rptr. 10]. *Arceo* concerned the statement given by the trial court in support of its sentencing choice to impose imprisonment rather than grant probation—admittedly a section 1170, subdivision (c) sentencing choice. Again, however, *Arceo* merely stands for the unremarkable proposition that a trial court may not state its reasons for such a sentencing choice by simply

referring to a third party report. *Arceo* says nothing about the adequacy of reasons that are independently stated by the trial court.

(c) *People* v. *Turner* (1978) 87 Cal.App.3d 244, at page 247 [150 Cal.Rptr. 807]. *Turner* is similar to *Hernandez* in that it, too, was concerned with a section 1170, subdivision (b), sentencing decision and the impropriety of the trial court's having simply referred to a third party report as its statement of reasons for the decision.

In short, none of the authority relied on by *Salazar* supports *Salazar*'s cursory holding that "the nature of the crime" is an insufficient reason for choosing imprisonment over probation as a sentencing choice. We decline to follow *Salazar* with respect to this issue.

(3) The third case cited by defendant, *People* v. *Young* (1983) 146 Cal.App.3d 729, at page 734 [194 Cal.Rptr. 338], is cited for the proposition that the "seriousness of the crime" is not an adequate reason for choosing imprisonment over probation as a basic sentencing choice. *Young,* however, is concerned with the issue of the adequacy of a trial court's statement of facts and reasons for aggravating an imprisonment term, not with the issue before us here.

(4) Finally, defendant cites *People* v. *McNiece* (1986) 181 Cal.App.3d 1048 [226 Cal.Rptr. 733] in support of his contention that the "nature and seriousness of the crime" is an inadequate reason for choosing imprisonment over probation as a sentencing choice. (*McNiece* is disapproved on other grounds in *People* v. *McFarland* (1989) 47 Cal.3d 798, 805 [254 Cal.Rptr. 331, 765 P.2d 493].) In *McNiece,* the Court of Appeal reversed a trial court which had chosen imprisonment over probation as its basic sentencing choice based on the sentencing criteria set forth in rule 414(c)(1) and rule 414(c)(2). The Court of Appeal's reasoning drew heavily from *People* v. *Bloom* (1983) 142 Cal.App.3d 310 [190 Cal.Rptr. 857]. In essence, the *McNiece/Bloom* rationale stands for the general proposition that rule 414(c) criteria cannot be applied in a case where there are no facts in the case upon which such criteria could be found to be applicable other than facts which are inseparable from the commission of the crime itself. (For example: The death of a victim would not be an appropriate "circumstance of the crime" on which to choose imprisonment over probation in a manslaughter case because, otherwise, probation would be presumptively unavailable in *all* manslaughter cases—a result clearly not intended by the Legislature.) We have no quarrel with the reasoning of *McNiece/Bloom*, but we find that it has no application in the case at hand. In this case, the record *does* disclose facts surrounding the commission of the manslaughter which support the trial court's "nature and seriousness" reason but which do not

constitute inherent elements of the crime of manslaughter. Among these facts are: (1) Defendant had physically fought with the victim before committing the crime; and (2) defendant deliberately abandoned the victim in the middle of the night and in a relatively isolated location.

We find that the trial court's reasons for choosing imprisonment over probation in this case are supported by facts in the record and are fully consistent with the legislative guidelines which apply to making that choice. None of the cases cited by defendant compel a different finding.

*B. The Significant Nature of Defendant's Prior Record.*

The trial court's second reason for choosing imprisonment over probation for defendant ("[T]he defendant's prior record is of significant nature, which would indicate that the defendant is not amenable to probation supervision.") is subject to exactly the same sort of analysis as that which is set forth above with respect to the "nature and seriousness of the crime" reason. In this instance, however, defendant has cited no authority in support of his position. Rather, defendant merely quibbles with the trial court's determination that defendant's prior record is "significant."

■ There are ample facts in the record to support the trial court's "prior record" sentencing reason. Among these facts are: (1) Defendant was convicted of attempted robbery and resisting arrest in New York;[5] (2) less than one year later, defendant was convicted of grand theft here in California; and (3) only seven months after his release from parole status by the New York authorities, defendant committed the crime here in issue. These facts fully support a determination that defendant's prior criminal record is "significant" in the sense that it indicates a lack of amenability to probation supervision.

## CONCLUSION

■ We hold that in making a section 1170, subdivision (c), sentencing choice (including the choice between imprisonment and probation): (a) A trial court need only state its reasons—not facts and reasons—for that choice; and (b) so long as the record discloses facts which appropriately support those reasons, the trial court's choice will be presumed to have been made on the basis of those facts—notwithstanding the disclosure in the

---

[5] Our Supreme Court has recognized that robbery is ". . . a serious crime, with an ever-present potential for exploding into violent confrontation." (*People* v. *Escudero* (1979) 23 Cal.3d 800, 811 [153 Cal.Rptr. 825, 592 P.2d 312].)

record of other facts which would not serve as appropriate support for the sentencing choice.[6]

DISPOSITION

The judgment is affirmed.

McDaniel, J., and Dabney, J., concurred.

---

[6] This presumption is, of course, rebuttable.