Filed 2/11/16  P. v. Williams CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B262292 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA419343) |
| v. | |
| RICKY L. WILLIAMS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Terry A. Bork, Judge.  Affirmed.

Cindy Brines, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

Defendant and appellant Ricky L. Williams appeals from the judgment entered following his conviction of selling a controlled substance, with prior drug offense, prior serious felony conviction and prior prison term findings. (Health & Saf. Code, §§ 11352, 11370.2; Pen. Code, §§ 667, subds. (a)-(i), 667.5.)[1] The trial court sentenced him to prison for 12 years.

## FACTUAL AND PROCEDURAL SUMMARY

Viewed in accordance with the usual rules of appellate review (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence established that on December 11, 2013, Los Angeles Police Department Officer Daniel Trunco was working undercover on a drug operation. Trunco approached defendant Williams and asked if he had any "Vics," which is "street vernacular for Vicodin." Williams replied, "No, but I got Clono," which is "street vernacular for clonazepam." When Trunco asked for $20 worth of Clono, Williams said he would give him five pills for that price. Trunco gave Williams a pre-marked $20 bill, which Williams put into his pocket. Williams then poured some pills into his own hand from a pill bottle. Three pills dropped to the ground. Williams told Trunco to pick up the dropped pills and then gave him two additional pills.

Trunco signaled that a successful purchase had taken place and the back-up team moved in to arrest Williams. The police recovered the marked $20 bill from Williams as well as a clear plastic bottle containing nine pills. Police also found two other pill bottles in Williams's possession. In addition, Williams had ten single dollar bills in his hand.

Chemical analysis of the pills that Williams sold Trunco showed them to contain hydromorphone, a controlled substance which is "a derivative of morphine." Williams's other pill bottles were found to contain two more controlled substances: alprazolam and hydrocodone.

After the trial court sentenced Williams to a prison term of 12 years, he filed a timely notice of appeal.

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

2

## DISCUSSION

After examination of the record, appointed appellate counsel filed an opening brief which raised no issues and requested this court to conduct an independent review of the record. By notice filed September 29, 2015, the clerk of this court advised Williams to submit by brief or letter any contentions, grounds of appeal, or arguments that he wished this court to consider. On November 2, 2015, Williams filed a supplemental letter in which he raised the claims addressed below.

1. *The wheelchair accessible courtroom and other trial issues*.

Williams makes a series of contentions relating to the fact that he needed a wheelchair at the time of his trial. One claim concerns a pretrial hearing on October 2, 2014, before Judge Rand S. Rubin in Department 112, which was held to discuss the scheduling of the three criminal matters pending against Williams at that time. Williams was represented by substitute defense counsel at this hearing. Williams argues Judge Rubin unfairly ejected him from the courtroom and, as a result, he was never told that he would be required to agree to a continuance if he wanted the trial to be held in a "wheelchair accessible courtroom."[2] But the record demonstrates there was ample reason for ejecting Williams from the courtroom.[3] In addition, the record of this hearing does not contain any discussion about a wheelchair accessible courtroom being available only if Williams agreed to a continuance. Instead, Judge Rubin noted several times during the hearing that this was a "wheelchair case," and even announced that he was sending the three cases out for trial on a schedule that would allow "time to find a wheelchair court [in which] to try them."

---

[2] The judge who subsequently conducted Williams's trial, Judge Terry A. Bork, described "wheelchair accessible courtrooms" this way: "Wheelchair courts are set up in this building to allow a defendant to be brought into court without being wheeled past or into and through the public hallway."

[3] Williams acknowledges he made belligerent comments to the judge during this hearing, and the reporter's transcript demonstrates that Judge Rubin only ordered Williams to the lockup after he persistently interrupted both the prosecutor and the judge with verbal outbursts.

On the morning of October 8, 2014, Judge Charlaine F. Olmedo in Department 100 transferred Williams's case to Department 113 for trial to begin later that same morning before Judge Terry A. Bork. Williams was represented by his regular defense counsel at both this hearing and at the subsequent trial before Judge Bork.

At the trial, the wheelchair issue was revisited when Judge Bork said: "It was brought to my attention that when this case was still in the master calendar court, Department 100, that this issue of whether to go to a wheelchair court . . . or not came before the parties and was addressed. [¶] . . . [¶] I am informed that that possibility was brought up and that Mr. Williams was offered that opportunity but was told that there wasn't one ready on the day the case was being sent out, and that if he wished the wheelchair court, he would have to waive time until a wheelchair court was open and available, and I'm informed that he declined to waive time." When defense counsel said this did not occur in Department 100, the prosecutor replied, "I think that happened in 112 before it was sent to 100." Defense counsel said she could not confirm this because she had not been present that day in Department 112. The prosecutor replied, "Your Honor, I do have a calendar deputy, I think he's down the hall, that handled this case up until then. I'd be happy to go get him, if you like." Judge Bork told the prosecutor not to interrupt the proceedings at this point, but to inquire later. The judge added: "I'll inquire further on the court end to see when that advisement was given or addressed. [¶] In any event, we'll take it up again later."

Williams alleges that the issue was never revisited. But this means Williams's claim – that he never agreed to trial in a non-wheelchair accessible courtroom – is predicated on a disputed factual question unresolved by the record before us. The proper avenue for Williams to pursue this claim is by means of a habeas corpus petition because on a direct appeal we do not consider matters outside the record. (See *People v. Maciel* (2013) 57 Cal.4th 482, 505; *People v. Black* (2009) 176 Cal.App.4th 145, 153.)

Moreover, Williams's underlying claim – that he did not receive a fair trial because jurors saw him in the courthouse hallway wearing jail clothes and being pushed in a Los Angeles County Jail wheelchair – is not only predicated on alleged facts outside

4

the record, but likely constituted only harmless error. The record tends to indicate that Judge Bork was particularly cognizant of Williams's special needs, noting for the record what precautions were being taken in this regard.[4] And nothing in the record establishes that Williams was in fact seen in the hallway by any juror. To establish a constitutional violation, Williams would have to demonstrate that jurors saw him in custody-identifying circumstances more than briefly. (See *People v. Rich* (1988) 45 Cal.3d 1036, 1085 ["even assuming the jurors at times briefly saw defendant being escorted in shackles and handcuffs to the courtroom or the restroom, defendant was not prejudiced thereby"]; *People v. Duran* (1976) 16 Cal.3d 282, 287, fn. 2 ["Such brief observations [of defendant in shackles] have generally been recognized as not constituting prejudicial error."].) Moreover, even if Williams could demonstrate that he had been viewed more than briefly, it is highly unlikely he would be able to establish prejudicial error under *Chapman v. California* (1967) 386 U.S. 18 [87 S.Ct. 824] (*Chapman*),[5] because the People's evidence so clearly demonstrated: that Williams agreed to sell a controlled substance to an undercover officer, that the marked $20 bill used to make the purchase was found in Williams's possession, and that chemical analysis proved the pills Williams sold to the undercover officer contained a controlled substance.

---

[4] Judge Bork said: "[W]e have taken efforts up to this point to bring Mr. Williams into the courtroom early, prior to the jurors gathering in the hallway so that they will not view him as being in custody. [¶] Additionally, the Sheriff's Deputy has taken the step . . . to have him dressed on a different level, so when he comes in through the hallway, he's not in jail blues, but rather he's in civilian clothing, and that's happened so far in this trial." In addition, the Deputy "is not handcuffing Mr. Williams while he's in the wheelchair in the hallway or here in the courtroom," and "he's allowing Mr. Williams to wheel himself, as opposed to pushing him through the hallway."

[5] Because "the right to be tried in civilian clothing is a constitutional right valuable to insuring a fair trial," an alleged error would be "of federal constitutional magnitude" and the applicable standard of review would be *Chapman*, which requires that " 'before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.' " (*People v. Taylor* (1982) 31 Cal.3d 488, 498-500.)

On an issue unrelated to the question of a wheelchair accessible courtroom, Williams complains that defense counsel was forced to start trial even though she told Judge Bork that she was unprepared. However, it is clear from the record that this is not what happened. As already noted, there were three pending criminal cases against Williams. Defense counsel and the prosecutor had apparently been advised in the master calendar department that the oldest of the three cases should be tried first. Defense counsel announced that she was ready on the oldest case, but not on the other two. After some discussion, Judge Bork agreed to try the oldest case first. It is the ensuing judgment in that oldest case from which Williams is now appealing.

2. *Sentencing issues*.

Williams contends that, in sentencing him for his current offense – selling a controlled substance (Health & Saf. Code, § 11350) – the trial court should have applied the proscription against multiple punishment (§ 654) because he engaged in only a single course of conduct. But section 654, which proscribes multiple punishment for *multiple convictions* based on the same act or course of conduct, is inapplicable here because Williams was convicted of only one offense: selling a controlled substance.

Williams contends he suffered ineffective assistance of counsel because his attorney unwisely advised him to admit that he had been convicted in 1993 of attempted robbery, the prior that triggered a doubling of the sentence for his current offense under the Three Strikes law. However, it appears from the record that because Judge Bork refused to accept Williams's admission to this prior conviction allegation,[6] the prosecution was forced to put on evidence during a subsequent court trial to prove that Williams had sustained this prior conviction. Hence, there could have been no ineffective assistance of counsel because Williams suffered no resulting harm even if his attorney's advice was deficient. (See *Williams v. Taylor* (2000) 529 U.S. 362, 390-391

---

[6] Judge Bork was unhappy with the manner in which the prosecutor tried to take Williams's admission, and Williams himself denied that he had ever been convicted of a robbery.

6

[146 L.Ed.2d 389] [to prove ineffective assistance " 'defendant must show that counsel's performance was deficient' " and " 'that the deficient performance prejudiced the defense' "].)

Citing the probation report, Williams appears to argue that his 1993 attempted robbery conviction should have been classified as a misdemeanor rather than a felony because he had been sentenced to only one year in county jail for the offense. However, the probation report shows that Williams was given a two-year concurrent *prison sentence* for that offense.

Williams contends his 1993 attempted robbery conviction (which apparently arose from his attempt to shoplift a bottle of brandy from a supermarket but turned into a physical struggle with several employees) did not qualify as a Three Strikes prior because it was only a so-called "*Estes* robbery" rather than a "real" robbery. Williams is wrong. In *People v. Estes* (1983) 147 Cal.App.3d 23, a Sears security guard saw Estes remove clothing from a rack, put it on, and leave the store without paying. When the guard confronted Estes in the parking lot, Estes pulled out a knife, swung it at the guard, and threatened to kill him. *Estes* has since been cited for the proposition that " '[e]ven if the perpetrator used peaceful means . . . to separate the property from the victim, "what would have been mere theft is transformed into robbery if the perpetrator . . . [later] uses force to retain or escape with [the property]." ' [Citation.]" (*People v. Hill* (1998) 17 Cal.4th 800, 850.) Hence, a mere shoplifting (such as Williams's apparent attempt to steal the bottle of brandy from the supermarket) can support a conviction for robbery if the defendant subsequently uses force or fear to retain the stolen property.

Williams appears to contend that his guilty plea to the 1993 attempted robbery was invalid because the trial court at that time never advised him of any possible Three Strikes repercussions arising from the conviction. This claim has no merit. The Three Strikes statutory scheme had not been enacted at the time Williams pled guilty to

7

attempted robbery in 1993.[7] In any event, the trial court would have had no duty to advise Williams of the potential collateral consequences of his guilty plea: "When entering a guilty plea, the defendant must be advised of the direct consequences of the conviction. [Citation.] However, possible future use of a current conviction is not a direct consequence of the conviction. [Citations.] [¶] A defendant need not be advised of the possible future use of a conviction in the event the defendant commits a later crime." (*People v. Bernal* (1994) 22 Cal.App.4th 1455, 1457.)

Williams suggests that the 1993 attempted robbery was invalid because his defense counsel at that time failed to advise him of future sentencing repercussions. However, a failure to anticipate changes in the law is not generally considered ineffective assistance of counsel (*Green v. Johnson* (5th Cir. 1997) 116 F.3d 1115, 1125 ["there is no general duty on the part of defense counsel to anticipate changes in the law"]; *Alcorn v. Smith* (6th Cir. 1986) 781 F.2d 58, 62 ["nonegregious errors such as failure to perceive or anticipate a change in the law . . . generally cannot be considered ineffective assistance of counsel"]), and – more generally – a noncapital defendant cannot collaterally attack a prior conviction by claiming constitutionally ineffective assistance of counsel (*Garcia v. Superior Court* (1997) 14 Cal.4th 953, 963).

Williams appears to contend the trial court abused its sentencing discretion in choosing the punishment for his current offense of selling a controlled substance in violation of Health & Safety Code section 11350. He argues the trial court should have taken into consideration various mitigating factors, e.g., that he was under the influence of drugs when the undercover officer approached him, that he thought he was just helping out a fellow street addict by making this drug sale, and that he acknowledged wrong-

---

**7** "A three strikes law was enacted as emergency legislation on March 7, 1994, and is set forth in section 667, subdivisions (b) through (i). (Stats. 1994, ch. 12.) Proposition 184 approved by the California voters on November 9, 1994, added section 1170.12 to the Penal Code, which contains almost identical provisions to those found in section 667, subdivisions (b) through (i)." (*People v. Superior Court (Perez)* (1995) 38 Cal.App.4th 347, 351, fn. 2.)

8

doing at an early stage of the proceedings. On this issue, we are guided by the rule that a "trial court enjoys broad discretion in making its sentencing choices, and these choices will be affirmed unless there is a clear showing that the trial court's actions were arbitrary or irrational." (*People v. Golliver* (1990) 219 Cal.App.3d 1612, 1616.) The problem for Williams is not merely that he cannot prevail under this standard,[8] but that he could not possibly have been harmed because the trial court sentenced him to a *mitigated* three-year prison term for this offense.

In addition to this three-year base term for Williams's current drug offense conviction, the trial court imposed two consecutive three-year enhancements under Health & Safety Code section 11370.2 (mandatory enhancements for prior drug convictions). Williams contends this was improper because his prior drug convictions did not result in prison terms. But Williams is ignoring the fact that the enhancement statute specifically provides that the enumerated drug offense priors will trigger mandatory enhanced sentencing "whether or not the prior conviction resulted in a term of imprisonment." (Health & Saf. Code, § 11370.2, subds. (a), (b) & (c).)

The trial court then doubled the resulting six-year prison term under the Three Strikes law. Williams suggests that in doing so the trial court abused its discretion by refusing to strike his 1993 attempted robbery conviction in the interests of justice under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*). Williams argues his *Romero* motion should have been granted because the attempted robbery was so old and it had not been a violent crime. However, as already discussed, the attempted robbery did

---

**8**    For example, "drug addiction is not necessarily regarded as a mitigating factor when a criminal defendant has a long-term problem and seems unwilling to pursue treatment" (*People v. Martinez* (1999) 71 Cal.App.4th 1502, 1511), and although Williams asserts the trial testimony of the arresting officers demonstrates that he voluntarily acknowledged wrong-doing at an early stage of the proceedings (which can be a mitigating factor [see Cal. Rules of Court, rule 4.423(b)(3)]), the officers who arrested Williams testified to no such thing.

involve violence,[9] and we conclude the trial court did not abuse its discretion by finding that the 1993 attempted robbery was not too remote in light of Williams's long and continuous criminal history. (See *People v. Gaston* (1999) 74 Cal.App.4th 310, 321 [remoteness of 17-year-old priors insignificant in light of defendant's extremely long criminal history]; *People v. Barrera* (1999) 70 Cal.App.4th 541, 552-555 [14-year-old conviction not too remote in light of defendant's lengthy criminal history].) As the trial court said in denying Williams's *Romero* motion: "The strike offense is old, but he has hardly led a blameless life either before or after the strike conviction. There is a long history of felony and misdemeanor convictions. He's been on and off probation and community supervisions. He's been in and out of state prison. [¶] And these [past] convictions . . . are not merely drug possession cases. There's hit and run, vandalism, theft, attempt robbery, drug sales cases, disorderly conduct, resisting officers two times, [possession of] a deadly weapon by a prisoner."

Williams contends his sentence should not have been enhanced by section 667.5 (enhancement for prior prison terms) because the appropriate underlying felony conviction was lacking. However, there was no such enhancement added to his sentence because the trial court vacated the section 667.5 findings for the purposes of sentencing.

---

**9** Even Williams's defense counsel acknowledged this at the sentencing hearing, arguing: "[N]one of Mr. Williams's convictions, his past convictions, *except for the attempted robbery*, involve crimes of violence." (Italics added.)

We have examined the entire record and are satisfied defense counsel has fully complied with her responsibilities and that no arguable appellate issue exists.[10] (*Smith v. Robbins* (2000) 528 U.S. 259, 278 [120 S.Ct. 746]; *People v. Wende* (1979) 25 Cal.3d 436, 443.)

---

**10** In addition to the issues discussed above, Williams's supplemental brief on appeal mentions some additional concerns that are not appropriate for resolution on this direct appeal because: they appear to be based on alleged facts that are outside the record (e.g., that the trial court made discretionary decisions based on documents Williams and his attorney were not able to review; that the court reporter failed to record Williams's discussions with Judge Rubin about the wheelchair), they are set forth without any substantive argument (e.g., that his sentence constituted cruel and unusual punishment), or a combination of the two (e.g., complaints that various documents generated by the court and prison systems were falsified).

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

ALDRICH, J.

LAVIN, J.