[Crim. No. 28068. Second Dist., Div. Five. Oct. 19, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
LAMBERT FLOWER, Defendant and Appellant.

COUNSEL

Henry P. Crabtree, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Kent L. Richland and Abram Weisbrot, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

STEPHENS, Acting P. J.—By information No. A436763, appellant was charged with two counts of forgery (Pen. Code, § 470), and two prior felony convictions (one in 1969 and one in 1971 were alleged). On December 4, 1974, appellant pled not guilty.

By information No. A436996, appellant was charged with possession of heroin (Health & Saf. Code, § 11350), and the two prior convictions previously alleged in No. A436763 were realleged. On January 29, 1975 appellant pled not guilty and denied the priors.

On February 11, 1975, appellant withdrew both pleas of not guilty, and pled guilty (with the consent of the prosecutor and approval of the court) to one count of forgery (No. A436763) and one count of possession of heroin (No. A436996). In both cases appellant personally, and through his counsel waived his right to trial by jury, to confront witnesses, and his privilege against self-incrimination.

On March 20, 1975, criminal proceedings were suspended in each case. Probation was granted in each case for a period of five years on various terms and conditions.

On October 1, 1975, appellant requested an evidentiary hearing on alleged violations of both probations, and after hearing appellant was found to be in violation of his probation in both case No. A436763 and case No. A436996. Both probations were revoked and appellant was sentenced to prison on both cases, the 2 sentences to run concurrently, with credit for 70 days previously served in case No. A436996 and 134 days

previously served in case No. A436763. In both cases, the Department of Corrections was granted permission to invoke provisions of section 11190 of the Penal Code with reference to custodial handling of defendant. This appeal is from the "sentence" in each case, and we treat it as an appeal from "the separate orders revoking probation, and the separate judgments of conviction," as "intended," according to appellant's opening brief (p. 3).

## Contentions

Appellant states: "Clearly, the trial court was justified in revoking defendant's probation in each case. The only issue for determination is whether the trial court abused its discretion in failing to consider an alternative to a California State Prison sentence."

## Facts Adduced at the Hearing

At the hearing, appellant's probation officer (Dugan), testified that appellant violated his probation in numerous ways; specifically, appellant failed drug testing, showing positive tests for heroin and phenobarbital (a charge appellant admitted), admitted to the continuous and incessant use of heroin while on probation in violation of probation conditions (a charge appellant's wife admitted), failed to report for drug testing in August, September and October 1975, was convicted of petty theft while on probation, and had pending burglary and nonsufficient fund check cases in superior court. The court indicated that it would ignore the pending cases in reaching a determination as to whether probation was violated. While on probation, appellant had been involved in a seven-day detoxification program at Metropolitan State Hospital.

On cross-examination, the probation officer indicated that appellant had called him a "nigger" on several occasions, denied having called appellant's wife a slut, and admitted there had been some discussion between appellant's wife and her probation officer, himself and appellant, about placing appellant's minor children in "protective custody," since appellant's wife as well as appellant was involved in detoxification programs.

On redirect, the probation officer testified that the circumstances of appellant calling him names had nothing to do with his recommendation.

Appellant's wife testified that her husband's probation officer was "rotten" toward her husband; that he was always antagonizing him, wanted to separate them from their children, and was opposed to her probation officer's plans for their joint rehabilitation; that he called her and her husband "no-good hypes, once a hype always a hype," and herself "a no-good mother."

Appellant testified and admitted that he called his probation officer a "nigger," because he had strong feelings against blacks; that his probation officer expressed no faith in him, and told him that he "couldn't make it," "that he was no good," and "would go back to [drugs]." He further testified that he had had a measure of success with the CRC Program; that he had stayed out of CRC and from drugs for almost four years, although he admitted having been a heroin user off and on for eight years.

*Arguments*

On appeal, the appellant argues that (1) the trial court failed to consider a possible referral to a drug rehabilitation program pursuant to Welfare and Institutions Code section 3051; and (2) "the trial court improperly sentenced appellant concerning the provisions of Penal Code section 11190."

Welfare and Institutions Code section 3051 provides in part as follows: "Upon conviction of a defendant for any crime in any superior court, or following revocation of probation previously granted, whether or not sentence has been imposed, if it appears to the judge that the defendant may be addicted or by reason of repeated use of narcotics may be in imminent danger of becoming addicted to narcotics he shall adjourn the proceedings or suspend the imposition or execution of the sentence and order the district attorney to file a petition for commitment of the defendant to the Director of Corrections for confinement in the narcotic detention, treatment and rehabilitation facility unless, in the opinion of the judge, the defendant's record and probation report indicate such a pattern of criminality that he does not constitute a fit subject for commitment under this section."

In the instant case the possibility was clearly raised that the defendant, appellant here, might be addicted to narcotics. The trial court was therefore required to consider the applicability of section 3051. (See

*People* v. *Ortiz,* 61 Cal.2d 249, 254-255 [37 Cal.Rptr. 891, 391 P.2d 163].) The record is devoid of reference to section 3051, nor did the court mention a drug rehabilitation program, though the appellant requested an order that he be placed in one. On the basis of the record's silence appellant contends there is no proof that the court did in fact properly consider section 3051 and exercise its discretion regarding the appellant's fitness for such commitment.

We have found no cases dealing with the precise question raised. However, a situation clearly analogous to section 3051 occurs when a youthful offender is convicted, whereupon the court must consider the appropriateness of committing the defendant to the custody of the California Youth Authority. (Welf. & Inst. Code, § 1731.5; *People* v. *Sparks,* 262 Cal.App.2d 597, 600 [68 Cal.Rptr. 909].) Cases have arisen where the trial record is silent on the issues of Youth Authority commitment though the facts require the court to consider the possibility *sua sponte* if necessary. In such situations, "[i]t is presumed that official duty has been regularly performed. (Evid. Code, § 664.) Such a presumption is one affecting the burden of proof (Evid. Code, § 660), the effect of which is to impose upon defendants the burden of proving that the trial court did not consider making such a referral. (Evid. Code, § 606.) The presumption that a court has regularly performed its official duties has been applied in other analogous areas of criminal law . . . ." (*People* v. *Sparks, supra,* at p. 600. See also *People* v. *Moran,* 1 Cal.3d 755, 762 [83 Cal.Rptr. 411, 463 P.2d 763].)

We believe that the rule announced in *Sparks* and followed in *Moran* is controlling here. Therefore, appellant bears the burden of proving that the trial court did not exercise the discretion commanded by section 3051. The only evidence the appellant adduces to prove his point is the record's silence on the matter. This clearly does not sustain his burden.

Appellant may have additionally intended to raise the issue of whether the trial court *correctly* exercised its discretion in not instituting proceedings under section 3051, though it is not clear that this is so. Since he may have attempted to allege an abuse of discretion, and since the respondent addresses the issue, we will review the trial court's determination that the appellant was not a fit candidate for rehabilitation under section 3051.

■ At the outset we note that ". . . where the trial court has exercised its discretion and determined that the defendant does not constitute a fit subject for commitment under [section 3051], its finding will not be upset if it is supported by the record. [Citations.]" (*People* v. *Jolke,* 242 Cal.App.2d 132, 143 [51 Cal.Rptr. 171].. See also *People* v. *Berry,* 247 Cal.App.2d 846, 849 [56 Cal.Rptr. 123].) Once a superior court determines that a convicted defendant appears to be an addict, as clearly is the case here (see *People* v. *Ortiz, supra,* 61 Cal.2d 249, 254-255; *People* v. *Jolke, supra,* at p. 143), section 3051 *requires* that criminal proceedings halt and a petition for commitment to a drug rehabilitation program be initiated unless " . . . in the opinion of the judge, the defendant's record and probation report indicate such a pattern of criminality that he does not constitute a fit subject for commitment . . . ." (Welf. & Inst. Code, § 3051.) The only valid statutory ground for the judge's decision *not* to initiate commitment proceedings, then, is the defendant's "pattern of criminality" as evidenced by his "record and probation report."[1]

■ The considerations which the trial court should weigh as it studies the defendant's record are revealed by a study of the case law. "Narcotics rehabilitation facilities are essentially nonpenal. [Citation.] In [section 3051] the Legislature expresses the concept that the treatment program conducted in these facilities may be impeded and impaired by patients of strong criminal tendencies. . . . [T]he determination of fitness for the rehabilitation program is committed to the peculiar province of the trial judge. . . ." (*People* v. *Zapata,* 220 Cal.App.2d 903, 913 [34 Cal.Rptr. 171].)

" 'The concept of "fitness for commitment" . . . flows from the nature of the program itself and the conditions under which it must operate to maximize its chances of success. It must retain its nonpenal character, and those who are receiving treatment must be able to function effectively in a minimum security setting, cooperate with fellow-patients and counselors in group therapy and work programs, and assume a certain degree of responsibility and self-reliance. Not all criminal defendants, unfortunately, exhibit these qualities.' [Citations.]" (*People* v. *Superior Court (Syvinski),* 2 Cal.3d 527, 532-533 [86 Cal.Rptr. 83, 468 P.2d 211].)

---

[1]Other reasons for not proceeding under section 3051 are found in section 3052 of the Welfare and Institutions Code. The provisions of section 3052 are not applicable here.

■ With the relevant guidelines defined, we apply them to the instant case. We note that the respondent's brief gives a detailed account of the appellant's criminal record as it is reflected in the probation report and other documents filed in the trial court's records for cases No. A436996 and No. A436763, and that the trial court read these records. Appellant has not refuted the facts related in the respondent's brief. The record reveals a long history of inability to abide by society's rules. Punishment meted out to the appellant has ranged from Youth Authority commitment, through fines and county jail sentences, both suspended and served, to state prison sentences, again suspended in some instances and actually served in others.

In view of the appellant's record, we find the following statement from *People* v. *Sateriale,* 247 Cal.App.2d 314, 316-317 [55 Cal.Rptr. 500], cert. denied, 389 U.S. 832 [19 L.Ed.2d 91, 88 S.Ct. 102], to be completely appropriate: "The information before the trial judge indicated a pattern of criminality, irresponsibility and indifference to the requirements and sanctions of the penal law. For his past offenses defendant had had the benefit of minimum sentences, Youth Authority training, probation and parole. His response was to progress to more serious offenses. The narcotic rehabilitation program requires in the subject a certain amount of cooperation and some capacity for accepting responsibility. It was not an abuse of discretion for the trial court to find that defendant was unfit." (See also *People* v. *Jolke, supra,* at p. 143; *People* v. *Zapata, supra,* 220 Cal.App.2d at pp. 912-913.)

■ Appellant's next argument is that the trial court failed to perform its duty by not *requiring* the Director of Corrections to invoke Penal Code section 11190 et seq. (the Western Interstate Corrections Compact)[2] and to incarcerate the appellant out of the state. This claim is nonmeritorious, for the court had no such duty, and we need not determine whether it lacked authority to impose such a requirement.

[2]Penal Code section 11191 provides: "Any court or other agency or officer of this State having power to commit or transfer an inmate (as defined in Article II (d) of the Western Interstate Corrections Compact) to any institution for confinement may commit or transfer such inmate to any institution within or without this State if this State has entered into a contract or contracts for the confinement of inmates in said institution pursuant to Article III of the Western Interstate Corrections Compact, but no inmate sentenced under California law may be transferred from an institution within this State to an institution without this State, unless he has executed, in the presence of the warden or other head of the institution in this State in which he is confined, a written consent to the transfer. An inmate may not revoke such consent."

A trial court has the power to render judgment. If the judgment includes imprisonment in a state institution (as opposed to a county jail), the court must provide an abstract of the judgment to the officer whose duty it is to execute the judgment. (Pen. Code, § 1213.) This abstract must contain certain information, but there is no requirement of a recommendation directly regarding the appropriateness of invoking section 11190 et seq. (Pen. Code, § 1213.5.) The requirement of information seems to be designed to aid correctional personnel in initially evaluating the defendant for purposes of confinement classification and assignment.

We note from the above statutes two things. First, the court was not required to give information directly relating to section 11190 et seq. There is also the suggestion that the trial court's authority may end once judgment is rendered; from that point on, decisions regarding the actual confinement of the defendant devolve upon the official who is to execute the judgment. This suggestion is further enhanced by Penal Code section 5054, which provides "[t]he supervision, management and control of the State prisons, and the responsibility for the care, custody, treatment, training, discipline and employment of persons confined therein are vested in the director" and section 5058, which states "[t]he director may prescribe and amend rules and regulations for the administration of the prisons. . . ." More specifically, Penal Code section 5080 provides that "[t]he Director of Corrections may transfer persons confined in one state prison institution or facility of the Department of Corrections to another." Pursuant to these statutes, the Director of Corrections has promulgated the following general policy:

"All determinations affecting an individual inmate's institution placement, [and] transfer between institutions . . . will be through the inmate classification procedures of the department.

"(a) The classification process will begin upon reception of a person committed to the custody of the Director of Corrections, and will continue throughout the entire time the individual remains under the jurisdiction of the Director of Corrections." (Cal. Admin. Code, tit. 15, § 3370.)

The statutes and the administrative code evidence an organizational framework whereby the judge determines if incarceration is appropriate; if so, the defendant is remanded to the custody of the Department of

Corrections which then takes full charge of administering a rehabilitation program. To effect its goal the department has established different programs at its various facilities to match the needs of the individual, and the Western Interstate Corrections Compact gives the department even greater flexibility in meeting individuals' specific needs. Indeed, the expressed purpose of the Compact is to " . . . by common action . . . provide programs of . . . high quality for the confinement, treatment and rehabilitation of various types of offenders . . . ." (Pen. Code, § 11190.)

The conclusion compelled by the foregoing is obvious. the responsibility of assigning prisoners to specific institutions falls upon the Director of Corrections, who is to exercise his discretion so as to maximize achievement of the goals of his department. The purpose of section 11190 et seq. is to facilitate the department's successful rehabilitation of inmates,[3] and it is certainly safe to say that the court had no duty to exercise more discretion than it did by advising the director that perhaps section 11190 et seq. should be considered in this case.

The judgment is affirmed; order affirmed.

Ashby, J., and Hastings, J., concurred.

On October 26, 1976, the opinion was modified to read as printed above.

---

[3]We note further that *neither* the court nor the Director of Corrections could *require* that the appellant accept out-of-state imprisonment. (Pen. Code, § 11191.) At the most, the court could require the Director to offer the alternative to the appellant.