[No. F011648. Fifth Dist. Jan. 23, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD CRUZ, Defendant and Appellant.

COUNSEL

Lawrence F. Salisbury, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Michael J. Weinberger and Roger E. Venturi, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**STONE (W. A.), J.**—Appellant Richard Cruz stands convicted by negotiated guilty plea of a violation of Health and Safety Code section 11352, offering to sell a controlled substance, arising from his attempt to sell a kilo of cocaine to undercover officers. On appeal, appellant contends it was an abuse of discretion for the trial court to find him unfit for civil narcotics addict commitment proceedings (Welf. & Inst. Code, § 3051)[1] based solely upon the circumstances surrounding the instant case and particularly the large amount of drugs possessed. Relying on this court's opinion in *People v. Madden* (1979) 98 Cal.App.3d 249 [159 Cal.Rptr. 381], appellant argues that the quantity of narcotics involved is an improper ground for refusing to initiate commitment proceedings and the only factor properly considered

---

[1] Except as otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

under section 3051—the defendant's criminal record—did not support a finding of excessive criminality in this case.

■ As explained below, we reaffirm our holding in *Madden* that excessive criminality is the only factor properly considered by the court in deciding whether to order filing of a petition for commitment of a possible addict to the California Rehabilitation Center (CRC). (*People v. Madden, supra,* 98 Cal.App.3d at pp. 261-262.) However, we clarify that in determining this issue, the trial court may look both to the defendant's record and the probation report, and a disqualifying pattern of criminality may be based upon appellant's past record or the nature and circumstances of the current offense, or both. We further hold that the quantity of drugs possessed or sold and the apparent extent of a defendant's illegal enterprise are relevant matters to be considered by the court in assessing the defendant's criminality under section 3051. As the record in this case amply supports the trial court's finding of excessive criminality, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant was charged by amended complaint filed in Fresno County Municipal Court with four counts of violating Health and Safety Code section 11352, sale of cocaine, on October 14, 19, and November 18 and 24, 1987. Pursuant to a plea bargain, appellant subsequently entered a plea of guilty to count four as amended to charge that on November 24, 1987, he offered to sell cocaine in violation of Health and Safety Code section 11352. In exchange for the plea, it was agreed that appellant would receive a maximum prison sentence of the four-year middle term, with the possibility of a commitment to CRC, and the remaining counts would be dismissed subject to *Harvey* waivers (*People v. Harvey* (1979) 25 Cal.3d 754, 758 [159 Cal.Rptr. 696, 602 P.2d 396]). The case was certified to superior court for sentencing. (Pen. Code, § 859a.)

The report of the probation officer provides a detailed account of the circumstances of the investigation and charges against appellant. Briefly, on October 14, 1987, appellant, while at home, sold a 16th of an ounce of cocaine to a police informant for $100. Appellant broke off that amount from what appeared to be an eighth of an ounce of cocaine. Appellant used a set of scales to weigh the portion he was selling and there was a revolver in the dresser drawer from which he retrieved a zip-lock plastic baggie.

Five days later, on October 19, 1987, appellant had what appeared to be two ounces of cocaine in rock form. He broke off a portion of it, weighed it

on a set of scales, placed it in a plastic baggie and sold it to a police informant for $80.

On November 7, 1987, a police informant saw appellant sell cocaine to three different people at a bowling alley during a thirty-minute period.

On November 17, 1987, appellant returned the call of Detective Buller, an undercover police officer, and made arrangements to meet him at Anderson's Restaurant in Santa Nella the following day to negotiate the sale of one kilo of cocaine. On November 18, 1987, Detective Buller met appellant at Anderson's Restaurant. In the course of their conversation, appellant stated that he had never worked his entire life and selling cocaine was the only thing that he ever had to do. After leaving the restaurant, appellant gave the undercover officer 3.13 grams of cocaine from a baggie containing approximately one ounce, as a sample for a future sale of a kilogram of cocaine for $22,000. Appellant indicated he would offer a better price for subsequent sales and mentioned that he got his cocaine from "wetbacks."

On November 24, 1987, appellant delivered one kilogram of cocaine at the price of $22,000 to Detective Buller in the parking lot of TGI Friday's in Fresno. Following his arrest, appellant stated " 'I knew what I was getting into when I was doing this. I knew the dangers. I guess when you live in the fast lane, you have to pay for it. I'm not addicted to cocaine but I am addicted to money and this was the easy way to make money. I will just have to pay the price whatever it is, five, six, or seven years, whatever it is.' "

However, in an interview with the probation officer on December 1, 1988, appellant claimed that he had been using cocaine since he was 20 years old and due to his addiction had lost jobs. Appellant said he had been "free basing" cocaine for the past year.

At the sentencing hearing, defense counsel requested the court to impose sentence in accordance with the plea bargain and to suspend proceedings under section 3051. Counsel argued that it was apparent appellant was addicted or in danger of addiction, had lost employment from being "too stressed on cocaine to maintain," and had a criminal record consisting of traffic and drunk driving matters exclusively.[2]

---

[2] Appellant was on probation at the time of the instant offense for a 1987 misdemeanor violation of Vehicle Code section 23103, subdivision (a). The probation report lists other prior

The prosecutor responded that appellant's statement to police that he was addicted to money more accurately reflected the nature of appellant's drug involvement, but even if appellant were addicted or in danger of addiction, the kilo-of-cocaine-for-$22,000 transaction demonstrated excessive criminality. Asked by the court to comment, the probation officer pointed to the dismissed counts as circumstances which could be considered on the issue of excessive criminality. Defense counsel disputed that the record showed excessive criminality, contending that appellant was "basically a nickel and dime cocaine user and cocaine seller" who "jumped at the offer the officers waved at him."

The court pronounced sentence as follows:

"Let me start with consideration of probation in this case. The Court has before it certainly something more than a nickel and dime dealer. This was a transaction involving a kilo of cocaine. The Court has the right to consider the dismissed counts as they bear upon sentencing. The Defendant was, I might add, on probation . . . at the time of the commission of the offense. The Defendant is clearly not amenable for a grant of probation in this case. Probation is therefore denied.

"With regard to considering an appropriate prison term, I will sentence to comport with the plea agreement. Choose the middle term of imprisonment. So commit the Defendant to the four year middle term for violation of [section] 11352 of the Health and Safety Code.

". . . . . . . . . . . . . . . . .

"With regard to the request that the Court conduct [section] 3051 proceedings, I'm satisfied that the circumstances of this offense and those surrounding circumstances indicating the Defendant's criminality at or about the time of this offense demonstrates [sic] excessive criminality. We are talking here about a large quantity of narcotics. It's well beyond this Defendant's needs to support his addiction. There is certainly a level of criminal sophistication shown by Defendant's conduct at or about the time of the offense to demonstrate that in the exercise of this Court's discretion he should be considered inappropriate for CRC based upon such excessive criminality. Court therefore denies the request to conduct [section] 3051 proceedings."

and pending Vehicle Code violations and a pending charge of violating Penal Code section 594, subdivision (b)(2), misdemeanor vandalism.

## DISCUSSION

██ Appellant contends the trial court improperly based its refusal to initiate CRC commitment proceedings solely upon the facts surrounding the present case—specifically, the quantity of narcotics involved—and made no determination that appellant's criminal record established excessive criminality. Citing *People* v. *Madden, supra*, 98 Cal.App.3d 249, appellant asserts the case must be remanded for appropriate consideration of commitment proceedings under section 3051.

Section 3000 et seq. establishes a program for the nonpunitive treatment and control of narcotics addicts, including persons convicted of criminal offenses, implemented by periods of treatment within CRC and outpatient supervision. In the case of felons, section 3052 automatically excludes from eligibility certain categories of offenses and offenders. As to felons not ineligible under section 3052, section 3051 requires the court to initiate proceedings for the civil commitment of any person who appears to be addicted to narcotics or in imminent danger of addiction *"unless, in the opinion of the judge, the defendant's record and probation report indicate such a pattern of criminality that he or she does not constitute a fit subject for commitment under this section. "* (Italics added.) Following commitment by the court, the Director of Corrections retains discretion to exclude any person who "because of excessive criminality or . . . other relevant reason," is found "not a fit subject for confinement or treatment" at CRC. (§ 3053, subd. (a).) " '[W]hether or not any given defendant can be treated with success is a fact which, in the last analysis, must be determined not by judges but by people trained in that field and actually engaged in the treatment process. Hence, out of practical necessity, the statute leaves to the professional experts the final decision on whether or not treatment should be begun or be continued.' " (*In re Marks* (1969) 71 Cal.2d 31, 40, fn. 6 [77 Cal.Rptr. 1, 453 P.2d 441], quoting *People* v. *Marquez* (1966) 245 Cal.App.2d 253, 256-257 [53 Cal.Rptr. 854].) ██ Thus, under the statutory scheme, the court has initial responsibility to screen out those addict-defendants who because of their pattern of criminality most obviously are unlikely to benefit from the rehabilitative program, and might disrupt or impede the treatment of others. (*People* v. *Flower* (1976) 62 Cal.App.3d 904, 911 [133 Cal.Rptr. 455]; *People* v. *Zapata* (1963) 220 Cal.App.2d 903, 913 [34 Cal.Rptr. 171]; see *People* v. *Superior Court (Syvinski)* (1970) 2 Cal.3d 527, 532-533 [86 Cal.Rptr. 83, 468 P.2d 211].)

██ Consistent with the policy of the law "favor[ing] inquiry into the addictive status of *all* criminal defendants whose record indicates the pres-

ence of an addiction problem" (*People* v. *Ortiz* (1964) 61 Cal.2d 249, 254-255 [37 Cal.Rptr. 891, 391 P.2d 163], original italics), this court has interpreted section 3051 to provide that "the only factor properly considered by the trial court in determining whether to institute commitment proceedings is excessive criminality; all other considerations should be left to the experts at CRC . . . ." (*People* v. *Madden, supra,* 98 Cal.App.3d 249, 261-262; *People* v. *Wagoner* (1979) 89 Cal.App.3d 605, 615 [152 Cal.Rptr. 639]; *People* v. *Lopez* (1978) 81 Cal.App.3d 103, 110-111 [146 Cal.Rptr. 165].) Accordingly, matters such as a defendant's lack of sincere motivation to participate in the treatment process (*People* v. *Lopez, supra,* 81 Cal.App.3d 103, 111) or participation in drug trafficking not found to constitute excessive criminality (*People* v. *Madden, supra,* 98 Cal.App.3d 249), may not form the basis for declining to refer a defendant for possible commitment. On the other hand, in deciding whether a defendant's "record and probation report indicate such a pattern of criminality that he or she does not constitute a fit subject for commitment," the court may consider, in addition to a defendant's prior convictions, such matters as his prior performance on probation or parole, and the nature and seriousness of the current offense. (*People* v. *Wagoner, supra,* 89 Cal.App.3d 605, 615; *People* v. *Flower, supra,* 62 Cal.App.3d 904, 911; *People* v. *Sateriale* (1966) 247 Cal.App.2d 314, 316-317 [55 Cal.Rptr. 500]; see *People* v. *Urdiain* (1986) 179 Cal.App.3d 330, 332 [225 Cal.Rptr. 1] [disqualifying pattern of criminality need not be based upon prior convictions].)

 Appellant argues, citing *People* v. *Madden, supra,* 98 Cal.App.3d 249, 260-262, that the trial court's above-quoted comments show that it erroneously relied upon appellant's drug dealing to deny CRC commitment. *Madden* holds that because the trial court's role is limited to deciding in the first instance whether "the defendant's record and probation report" show a disqualifying pattern of criminality (Welf. & Inst. Code, § 3051), it is improper for the court to look to CRC's exclusionary criteria to second-guess the ultimate determination of fitness for treatment. In *Madden,* the sentencing court found the defendant unfit for commitment solely "by reason of trafficking and possession of amounts of heroin beyond that which might reasonably be necessary to support her own immediate needs." (*Id.* at pp. 260-261.) Noting that large scale trafficking was one of the exclusionary criteria applied by the experts at CRC to determine suitability for treatment following commitment, this court concluded that the trial court abused its discretion in declining, on a ground *other than excessive criminality,* to initiate commitment proceedings.

We do not read the court's comments herein as indicating reliance upon CRC's exclusionary criteria. Rather, it appears the court was referring to (1) appellant's substantial history of sales activity, as reflected in the dismissed counts, and (2) the quality of appellant's criminal involvement as reflected by the scale of the transaction in count four. The court clearly rejected appellant's argument that his problems were caused by his addiction and expressly took the view that the nature and seriousness of appellant's current series of offenses showed an excessive degree of criminality. In *People v. Urdiain, supra,* 179 Cal.App.3d 330, the reviewing court upheld an implied finding of excessive criminality based on evidence presented at trial and in the probation report of the defendant's "extensive involvement in drug trafficking" resulting in conviction of "four controlled substance violations occurring over a period of three months, . . ." (*Id.* at pp. 332-333.) The *Urdiain* court flatly rejected the defendant's argument, founded upon a reading of *Madden,* that the court had no discretion to refuse initiation of commitment because defendant had no record of prior convictions, and held that a disqualifying pattern of criminality also may be based upon information in the probation report indicating criminality, including the circumstances of the current offense(s). (*Ibid.*) Despite *Urdiain*'s disagreement with the reasoning of *Madden,* we find the result consistent with our interpretation of *Madden.*

■ A trial court's preliminary determination under section 3051 of a defendant's fitness for rehabilitative treatment necessarily involves an assessment, based upon the defendant's record and probation report, whether the defendant's main problem is drug abuse or a criminal orientation as reflected in a pattern of criminality. Because this is inherently a qualitative judgment on the available information, the statute invests the court with "a broad discretion which will not be disturbed on appeal in the absence of abuse." (*People v. Zapata, supra,* 220 Cal.App.2d 903, 913; see Belton, *Civil Commitment of Narcotics Addicts in California: A Case History of Statutory Construction* (1968) 19 Hastings L.J. 603, 632-634.)

■ In light of the evidence before it, including appellant's statements and actions over a substantial period of documented drug trafficking, his poor performance on probation and the serious nature of the offense to which he pleaded guilty, the court reasonably determined that appellant had shown a disqualifying "pattern of criminality, irresponsibility and indifference to the requirements and sanctions of the penal law." (*People v. Sateriale, supra,* 247 Cal.App.2d at pp. 316-317.) Accordingly, we find no abuse of discretion in the court's refusal to initiate proceedings under Welfare and Institutions Code section 3051. (See *People v. Ellers* (1980) 108

Cal.App.3d 943, 957 [166 Cal.Rptr. 888]; *People* v. *Flower, supra,* 62 Cal.App.3d 904, 911-912.)

The judgment is affirmed.

Franson, P. J., and Martin, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 18, 1990.