[No. F018887. Fifth Dist. Feb. 3, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
RENE GRANADO, Defendant and Appellant.

**COUNSEL**

David S. Rugendorf, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, and Wanda Hill Rouzan, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**THAXTER, J.**—We hold here that when a trial court refuses to initiate civil narcotic addict commitment proceedings under Welfare and Institutions

Code[1] section 3051 because of the defendant's pattern of criminality, it must, under California Rules of Court,[2] rule 406(b), give a statement of reasons which at least point to the factors upon which the court relied.

## FACTUAL AND PROCEDURAL BACKGROUND

At a preliminary hearing, Bakersfield Police Officer Raymond Pewitt testified that on August 11, 1992, he went to a house on Beech Street to investigate a report of a man standing in the backyard firing a firearm. Pewitt had also been informed of the possibility that the residents of this house were growing marijuana plants in the backyard. On arrival, Pewitt encountered Anthony Baldonado. Baldonado was not holding a weapon. While speaking with Baldonado, Pewitt noted a "small dirt plot" in the middle of the grass yard which appeared to be prepared for planting.

Pewitt left the scene and obtained more information on Baldonado from the sheriff's department. Based on this information and his own observations, he obtained a search warrant and returned to the house. Inside the house he and other officers found Baldonado, appellant Rene Granado, and a female juvenile, 16 years of age; all were detained and handcuffed while the house was searched.

Within the house the officers found a suspected phencyclidine (PCP) cigarette, partially smoked; 5 suspected PCP cigarettes, intact;[3] several packages of rolling papers; a 1-gram scale; 3 pagers; a diary, with the female juvenile's name printed on the cover, containing 18 "pay and owe" notations on one page; a loaded semiautomatic handgun, which checked out as stolen; a separate 30-round ammunition magazine, also loaded, but with no matching gun; a loaded .357-caliber revolver; and several loose rounds of .25-caliber ammunition. The diary, the five intact PCP cigarettes, and two of the pagers (one of which was active, with ten to fifteen logged calls) were seized in the northwest bedroom, which was shared by appellant and the female juvenile. The partially smoked PCP cigarette was in Baldonado's room.

Outside the house, but on the premises, the police found seven small marijuana plants.

No cash was found on the premises.

---

[1]Further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]Further references to rules are to the California Rules of Court unless otherwise indicated.

[3]Laboratory tests confirmed that the cigarettes contained crystalline PCP.

Appellant waived his *Miranda*[4] rights and spoke with Pewitt. He stated that he had no involvement with the sale of PCP. He and his girlfriend, the female juvenile, had been staying with his cousin, codefendant Baldonado, and his cousin was a heavy user of PCP. Appellant did not know whether Baldonado sold PCP. The juvenile also waived her rights. She told Pewitt that the pay/owe book was hers, but that she had acquired it with the notations already present. Both appellant and the juvenile indicated they were unemployed and had been staying at the house "on and off" for about a month. A utility bill found at the scene suggested that codefendant Baldonado resided at the house full-time.

While Pewitt was at the scene, some 15 telephone calls came in. About half of the callers asked for "Tony," the other half asked for "Rene."

Pewitt expressed his opinion that the five PCP cigarettes were possessed for the purpose of sale.

After the preliminary hearing, appellant was charged with a total of seven felony counts, as to all of which he pleaded not guilty. He also denied an enhancement allegation that a principal in two of the counts was armed with a firearm in the commission of the offense, within the meaning of Penal Code section 12022, subdivision (a)(1). Baldonado was charged jointly with appellant and was also named separately in seven additional counts.

At the readiness hearing on October 16, 1992, appellant withdrew his previous pleas as to counts one and two, possession of PCP for sale (Health & Saf. Code, § 11378.5) and cultivation of marijuana (Health & Saf. Code, § 11358). He entered pleas of nolo contendere to these two counts and admitted the truth of the enhancement allegation as to count one. The pleas were conditioned on appellant serving no more than five years in prison and included a *Harvey* waiver.[5] The remaining charges against appellant were dismissed on motion of the district attorney. The court found appellant guilty on counts one and two.

In his presentence interview with the probation officer, appellant claimed he had used PCP every day for the past year and considered himself a drug addict. He expressed a desire for drug treatment, requesting a commitment to the California Rehabilitation Center (CRC).

At the sentencing hearing, appellant (through counsel) specifically requested that he be referred to CRC. The court sentenced appellant to a total

---

[4]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

[5]*People* v. *Harvey* (1979) 25 Cal.3d 754, 758 [159 Cal.Rptr. 696, 602 P.2d 396]; see *People* v. *Goulart* (1990) 224 Cal.App.3d 71, 80 [273 Cal.Rptr. 477].

fixed term of five years' imprisonment and denied the request for CRC referral.

### DISCUSSION

In this timely appeal appellant attacks only the trial court's refusal to initiate civil narcotics addict commitment proceedings. He attacks the order on two levels. First, appellant contends the court did not make an adequate statement of reasons for its decision. Second, he claims the decision was not justified by the information before the court and constituted an abuse of discretion.

Section 3051 provides in pertinent part: "Upon conviction of a defendant for any crime in any superior court, . . . and upon imposition of sentence, if it appears to the judge that the defendant may be addicted or by reason of repeated use of narcotics may be in imminent danger of becoming addicted to narcotics the judge shall suspend the execution of the sentence and order the district attorney to file a petition for commitment of the defendant to the Director of Corrections for confinement in the narcotic detention, treatment, and rehabilitation facility unless, in the opinion of the judge, the defendant's record and probation report indicate such a pattern of criminality that he or she does not constitute a fit subject for commitment under this section."

A trial court's consideration of this statute involves a two-step process. First, the court must determine "if it appears . . . that the defendant may be addicted or by reason of repeated use of narcotics may be in imminent danger of becoming addicted to narcotics . . . ." Second, if the court makes the preliminary determination of addiction or imminent danger thereof, the court must either suspend execution of sentence and order initiation of CRC commitment proceedings or find the defendant unfit for such commitment.

As to the second step of the process, case law establishes that excessive criminality is the *only* consideration a sentencing court should look to for refusing to initiate CRC proceedings. "[T]his court has interpreted section 3051 to provide that 'the only factor properly considered by the trial court in determining whether to institute commitment proceedings is excessive criminality; all other considerations should be left to the experts at CRC . . . .'" (*People* v. *Cruz* (1990) 217 Cal.App.3d 413, 420 [266 Cal.Rptr. 29].)

In this case, the sentencing court's only statement regarding appellant's request for a CRC referral was: "I do find under People versus Cruz that there is involved in this transaction circumstances which justify refusal to process for CRC and I will not process for CRC."

*Adequacy of Statement of Reasons*

█ So far as we can determine, no reported California case holds that a sentencing court which has considered and rejected the possibility of ordering initiation of civil commitment proceedings under section 3051 must give a statement of reasons for its decision. The statute itself contains no such requirement.[6]

Effective January 1, 1991, however, the Judicial Council adopted rule 406(b), spelling out in some detail the situations in which a sentencing court must state reasons for a sentencing choice. "Sentence choices that generally require a statement of a reason include: . . . (10) not committing an eligible defendant to the California Rehabilitation Center." (*Ibid.*) This rule, to the extent not inconsistent with statutory or constitutional provisions, has the force of law. (*People* v. *American Bankers Ins. Co.* (1990) 225 Cal.App.3d 1378, 1381, fn. 2 [276 Cal.Rptr. 210]; see *In re Michael V.* (1986) 178 Cal.App.3d 159, 167 [223 Cal.Rptr. 503]; see also *Oats* v. *Oats* (1983) 148 Cal.App.3d 416, 420 [196 Cal.Rptr. 20].)

We have some difficulty with the language of rule 406(b). Literally, the rule requires a statement of a reason for "not committing an eligible defendant" to CRC. Under section 3051, however, a decision to commit (or not to commit) is mandated when the court makes a factual finding that the defendant is (or is not) an addict, or in imminent danger of becoming an addict. The finding is made after the defendant has been examined by one or more physicians who submit a written report(s) to the court, and after the court has held an evidentiary hearing, unless a hearing is waived. (§§ 3051, 3104-3107.) Once it is found the defendant is an addict or in imminent danger of becoming one, the court is without discretion *not* to commit him or her.

The only real "choice" made by a sentencing court under section 3051 is that made when the court decides whether to *initiate* proceedings which might lead to commitment. In order to give meaning to the reference to CRC in rule 406(b), we conclude that a statement of reasons is required when,

---

[6]The contention that a statement of reasons is required in such cases has been considered and rejected. In *People* v. *Enright* (1982) 132 Cal.App.3d 631 [183 Cal.Rptr. 249], the court stated it found "no authority requiring a statement of reasons in these circumstances, nor is there good reason for imposing such a requirement . . . ." (*Id.* at p. 637.) We have some doubt whether *Enright* is correct on this point. Penal Code section 1170, subdivision (c) requires a court, when it makes a "sentence choice," to "state the reasons for its sentence choice on the record at the time of sentencing." Rule 405(f) defines "sentence choice" as "the selection of any disposition of the case which does not amount to a dismissal, acquittal, or grant of a new trial." This definition arguably includes proceedings under section 3051.

as in this case, the court decides not to order *initiation* of commitment proceedings.[7]

■ The question remains whether the trial court's statement here was adequate. The statement was that "under People versus Cruz [ ] there is *involved in this transaction* circumstances which justify refusal to process for CRC." (Italics added.)

The court's reference was to our decision in *People* v. *Cruz, supra,* 217 Cal.App.3d 413. We held there that in making a finding on excessive criminality, "the court may consider, in addition to a defendant's prior convictions, such matters as his prior performance on probation or parole, and the nature and seriousness of the current offense." (*Id.* at p. 420.) It is clear that the court below was looking not at appellant's overall criminal record, but solely at the circumstances involved "in this transaction." Even appellant acknowledges that the ruling can only be read as a finding that the circumstances surrounding the instant transaction were the basis for denying the request for CRC referral.

The court did not, however, specify what particular circumstances it thought made appellant unsuitable for CRC referral, i.e., what facts involved in the affairs leading to appellant's arrest amounted to excessive criminality. Appellant argues this was error.

■ The purpose of requiring a statement of reasons for a sentencing choice is "to permit meaningful review." (*People* v. *Lock* (1981) 30 Cal.3d 454, 459 [179 Cal.Rptr. 56, 637 P.2d 292].) Because the *only* valid reason for a court's refusal to initiate CRC proceedings for an eligible defendant is excessive criminality, a statement which does nothing more than parrot the statutory language would add nothing to the appellate record and would not satisfy the purpose of the requirement. Something more than a bare statement of "excessive criminality" is required.[8]

We believe that at a minimum the required statement of reasons must include some specification of where the court was looking in making its

---

[7]There might also be a question whether the court must state reasons if it decides not to pursue commitment proceedings based on absence of the first step, triggering condition ("it appears to the judge that the defendant *may* be addicted" etc.). In our view the court's function at that stage is more in the nature of determining facts, rather than exercising discretion or making a choice. Also, rule 406(b) refers to an "eligible" defendant, which seems to suggest that the threshold determination is not subject to the requirement of a statement of reasons. We need not decide this question here, however, because both parties treat the trial court's ruling as a finding of excessive criminality.

[8]Otherwise, merely refusing to initiate commitment proceedings would probably suffice. If a court simply stated that it refused to initiate CRC proceedings, we would have to presume (Evid. Code, § 664) that it did so based on the only valid reason available to it—excessive

finding of excessive criminality. In other words, was it looking at the defendant's prior convictions, his prior performance on probation or parole, the nature and seriousness of the current offense, or some other factors evidencing criminality? Here the court indicated that it was looking at circumstances "involved in this transaction" in denying CRC referral. This statement eliminated appellant's past record and other such factors as the reason for the court's sentencing choice and focused our review to the circumstances of the current case.

 In making a sentence choice under Penal Code section 1170, subdivision (c) (and consequently under rule 406(b)), the sentencing court need not state *facts*, but merely *reasons*. (See *People* v. *Prothro* (1989) 215 Cal.App.3d 166, 170-171 [263 Cal.Rptr. 433]; *People* v. *Golliver* (1990) 219 Cal.App.3d 1612, 1617, 1620 [269 Cal.Rptr. 191].) "[S]o long as the record discloses facts which adequately support those reasons, the trial court's choice will be presumed to have been made on the basis of those facts. . . ." (*Id.* at p. 1620.) The presumption is rebuttable. (At p. 1621, fn. 6.)

 We conclude that the trial court complied with the requirements of Penal Code section 1170, subdivision (c), and rule 406(b). The next inquiry is whether the record discloses facts supporting the court's determination that the circumstances "in this transaction" adequately show a pattern of criminality.

### Sufficiency of Factual Support for Court's Reasons

 The evidence strongly indicates that appellant was living at a house where drug sales were being conducted. Five PCP cigarettes were found in his room; Officer Pewitt testified that in his opinion this quantity was more than a user would purchase at one time for personal use. Appellant's girlfriend, a minor, was in possession of pay/owe records, the only such records found at the house. Several pagers were found in the residence, two of which were in appellant's room. One of those two pagers was activated and had numerous calls logged. Numerous telephone calls were made to the residence during the execution of the search warrant, half of which were apparently intended for appellant. There was no evidence, save a self-serving statement to the probation officer after arrest, that appellant possessed the PCP for personal use.[9] Appellant pleaded no contest to the charge that he possessed PCP for sale, and he admitted that a principal in that offense was armed with a firearm.

---

criminality. Thus, a statement that the court relied on excessive criminality would be redundant.

[9]Appellant's prior juvenile and adult record included no narcotics offenses, either possession or sale.

Appellant argues that the instant facts differ markedly from those in *People* v. *Cruz, supra,* 217 Cal.App.3d 413, our most notable case on excessive criminality. Primarily, he points out that *Cruz* involved an offer to sell drugs valued at $22,000, while here the charge was possession for sale of 6 cigarettes and "no more than 18.5 grams of alleged marijuana."

Nothing in *Cruz,* however, indicates that it stands as some minimum standard for measuring a finding of excessive criminality based on circumstances of the present case. The circumstances will vary from case to case, and in each case the trial court must make an "inherently [ ] qualitative judgment on the available information." (*Cruz, supra,* 217 Cal.App.3d at p. 421.)

It is true that the quantity of drugs in appellant's possession was less than that in *Cruz.*[10] But quantity is only one factor. The evidence here clearly showed appellant was participating in an active program of narcotics sales conducted with some degree of sophistication. One of the principals was armed. Appellant involved his 16-year-old girlfriend in the operation. We cannot say that the trial court abused its discretion in concluding that these facts showed such a pattern of criminality that appellant does not constitute a fit subject for commitment to CRC.

### DISPOSITION

Judgment affirmed.

Martin, Acting P. J., and Harris, J., concurred.

A petition for a rehearing was denied February 28, 1994.

---

[10]The amount of marijuana seized here may be misleading, as the marijuana was in the form of immature plants which doubtless would eventually have yielded more of the drug than that actually seized.