[Nos. A061915, A061916. First Dist., Div. Three. Aug. 10, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
RAYMOND EDWARD McLEMORE, Defendant and Appellant.

602

## COUNSEL

E. Elliot Kessler, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ann K. Jensen and Stan M. Helfman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WHITE, P. J.**—A jury found Raymond Edward McLemore guilty of the sale of cocaine. (Health & Saf. Code, § 11352, subd. (a).) A separate jury found him guilty of petty theft. (Pen. Code, § 484.) In a bifurcated proceeding the court found he had suffered prior convictions for theft. (Pen. Code, § 666.) Defendant was sentenced on both convictions simultaneously. Defendant appealed from both judgments and this court granted his motion to consolidate the cases on appeal. We affirm the judgments.

### FACTS

*Sale of Cocaine*

At approximately 5 p.m. on May 7, 1992, narcotics detectives Avon Dobie and Mitchell Peixoto of the Richmond Police Department were driving in an undercover van on Fourth Street in Richmond. Dobie observed defendant and another man, later identified as Freddie Blade, standing on the sidewalk near the park. Defendant reached into his right front pant pocket, took out several small white objects which looked like rock cocaine, and held them in the palm of his right hand. Blade chose one of the objects from defendant's hand and gave him some money in exchange. Peixoto radioed for assistance.

Detectives Vaca and Miner, who had a description of defendant, arrived on the scene in a marked police vehicle. Vaca observed defendant walk across the street, enter a grocery market, and throw at least three plastic baggies containing white chunky material over the grocery counter. Defendant was placed under arrest. The chunky material was later found to contain cocaine.

Defendant testified in his own defense. He stated that on May 7, he encountered Blade on the street and Blade asked him for a couple of dollars. Defendant responded he had no money for him. Blade then stated he had some syringes for sale. Defendant stated he was not using, but would pay Blade a couple of dollars for them. Defendant gave Blade a handful of change that he had in his pocket and Blade gave him two packages of syringes. When defendant saw the police he started to walk toward the market. Immediately before he entered the market, his child told him "Daddy, the police are after you." Defendant started to run, because he was on probation and did not want to be found with drug paraphernalia. Defendant denied ever possessing or discarding any rock cocaine.

*Petty Theft*

On September 11, 1992, Beverly Deichman, the manager of Goldman's at El Cerrito Plaza, saw defendant enter the store with a woman and two children. He was not carrying anything in his hands. Defendant went in one direction, the woman in another. Deichman motioned to Margaret Kalberer, a salesperson, to give defendant some help.

Kalberer approached defendant and asked whether he needed any assistance. Defendant stated he wished to exchange the dress he was holding in his hand for a different size. When Kalberer took the dress she observed it had a sensor tag and a complete sales tag. She called the manager and handed her the dress.

Defendant told Deichman he wanted to exchange the dress; he was doing this for his mother who needed a larger size. Deichman inquired whether defendant's mother had purchased the dress at this particular store. Defendant responded that he did not know where she had purchased the dress. Deichman stated the dress still had the sensor and entire price tag on it,[1] and asked whether defendant had a receipt. Defendant stated he had no receipt. Deichman explained that because of the sensor and whole tag, it appeared the dress had never been purchased and she required a receipt.

Defendant became aggressive and started "running off at the mouth" saying such things as "[Y]ou act like I stole this dress" and "I used to be a security guard." Deichman attempted to stall for time by asking for defendant's driver's license, filling out a long form, and calling her district manager.

---

[1] When an item is normally purchased, the salesperson writes the number of the store, the date of purchase, and the salesperson's number on the back of the price tag. The tag is then torn in half.

When Deichman told defendant she would keep the dress until his mother came in with a receipt, defendant insisted the dress was his, and he wanted it back. Afraid defendant would come behind the counter and grab the garment, Deichman gave defendant the dress. He left the store with the dress. Deichman testified the retail value of the dress was $160.

DISCUSSION

*Unanimity Instruction*

While discussing jury instructions in the petty theft trial, defense counsel argued the prosecution had alleged two separate acts of theft. First, by claiming the dress was his mother's and attempting to exchange it defendant allegedly committed theft by an act of trick and device. Second, the act of taking the dress from the store without paying for it constituted simple larceny. Counsel insisted if the prosecution was going to argue both theories of theft, the court should give CALJIC No. 17.01 (the unanimity instruction) and not CALJIC No. 14.47 (agreement on form of theft committed unnecessary). The court ruled CALJIC No. 17.01 was not required on the facts of this case. ■ Citing *People* v. *Melendez* (1990) 224 Cal.App.3d 1420 [274 Cal.Rptr. 599], defendant argues the court was required to give the unanimity instruction, because the evidence presented two factual scenarios that would support distinct theories of guilt. We disagree.

The crux of the present controversy deals with the meaning of a unanimous criminal verdict. Must the jurors agree the defendant committed the ultimate statutory offense of theft or must they also agree on his course of conduct in accomplishing the crime? (Cf. *People* v. *Sullivan* (1903) 173 N.Y. 122 [65 N.E. 989]; *United States* v. *Gipson* (5th Cir. 1977) 553 F.2d 453.)

In *Melendez*, the defendant and two accomplices committed a robbery of a store. The prosecution did not claim the defendant was an active participant in the crime. However, the prosecutor told the jury the defendant could be found guilty either as a conspirator or as an aider and abettor, and it did not matter which theory the jurors believed. The trial court did not give a unanimity instruction.

On appeal the defendant argued he was denied his right to a unanimous verdict because some jurors could have relied on certain evidence to find him guilty of conspiracy while other jurors could have relied on different evidence to find him guilty as an aider and abettor. Thus, the defendant might have been convicted of the robbery when the jury was not unanimous about the acts he committed. Relying on *United States* v. *Gipson, supra,* 553

F.2d at pages 457-458, the Court of Appeal concluded "[w]here a single crime can be proven by different theories based on different acts and at least two of these theories rely on different evidence, and where the circumstances demonstrate a reasonable possibility that a juror will find one theory proven and the other not proven but that all of the jurors will not agree on the same theory, a unanimity instruction must be given." (*People* v. *Melendez, supra*, 224 Cal.App.3d at pp. 1433-1434.)

The continued validity of *Melendez* is questionable. In *Schad* v. *Arizona* (1991) 501 U.S. 624 [115 L.Ed.2d 555, 111 S.Ct. 2491], the United States Supreme Court considered the issue of jury unanimity in the context of first degree murder; that is, whether a jury had to unanimously agree on whether the murder was premeditated or a felony murder. In a five-to-four decision, the plurality of the court rejected the analysis set forth in *Gipson* and held each juror need only find the defendant guilty beyond a reasonable doubt of the single statutory offense of first degree murder. (*Id.*, at pp. 634-637 [115 L.Ed.2d at pp. 566-569].) The *Schad* view has been adopted by the California Supreme Court. (See *People* v. *Pride* (1992) 3 Cal.4th 195, 249 [10 Cal.Rptr.2d 636, 833 P.2d 643]; *People* v. *Beardslee* (1991) 53 Cal.3d 68, 92 [279 Cal.Rptr. 276, 806 P.2d 1311].)

In *People* v. *Davis* (1992) 8 Cal.App.4th 28 [10 Cal.Rptr.2d 381], a defendant was convicted of robbery. The evidence showed he could have been convicted as a perpetrator or as an aider and abettor. On appeal he contended a unanimity instruction should have been given. The Court of Appeal analyzed the differing rules articulated in *People* v. *Sullivan, supra*, and *United States* v. *Gipson, supra*, reviewed the Supreme Court's analysis in *Schad* v. *Arizona, supra*, and concluded *Melendez* had been wrongly decided and ". . . the trial court was not required to instruct concerning jury unanimity with regard to the various theories of criminal participation." (*People* v. *Davis, supra*, at p. 45.) Similar results were reached in *People* v. *Sutherland* (1993) 17 Cal.App.4th 602, 609-611 [21 Cal.Rptr.2d 752] (no unanimity instruction required on whether defendant forged or uttered check), *People* v. *Snead* (1993) 20 Cal.App.4th 1088, 1095-1096 [24 Cal.Rptr.2d 922] (unanimity not required on whether defendant was perpetrator, coconspirator or aider and abettor), and *People* v. *Perez* (1993) 21 Cal.App.4th 214, 222-223 [26 Cal.Rptr.2d 691] (same). We agree with this line of cases.

In the instant action it was irrelevant whether defendant obtained the dress by trick or intimidation of the store employees. The end result was that he left the store with property he had not paid for.

*Commitment to California Rehabilitation Center (CRC)*

 Defendant contends the trial court abused its discretion by failing to institute civil narcotics addict commitment proceedings. He maintains he was eligible for CRC commitment, presented evidence he was a drug addict or was in imminent danger of again becoming a drug addict, but the court made no finding of criminality and failed to initiate CRC proceedings.

Welfare and Institutions Code section 3051 provides in relevant part: "Upon conviction of a defendant for any crime in any superior court, . . . if it appears to the judge that the defendant may be addicted or by reason of repeated use of narcotics may be in imminent danger of becoming addicted to narcotics the judge shall suspend the execution of the sentence and order the district attorney to file a petition for commitment of the defendant to the Director of Corrections for confinement in the narcotic detention, treatment, and rehabilitation facility unless, in the opinion of the judge, the defendant's record and probation report indicate such a pattern of criminality that he or she does not constitute a fit subject for commitment under this section."

 "A trial court's consideration of this statute involves a two-step process. First, the court must determine 'if it appears . . . that the defendant may be addicted or by reason of repeated use of narcotics may be in imminent danger of becoming addicted to narcotics. . . .' Second, if the court makes the preliminary determination of addiction or imminent danger thereof, the court must either suspend execution of sentence and order initiation of CRC commitment proceedings or find the defendant unfit for such commitment. [¶] As to the second step of the process, case law establishes that excessive criminality is the *only* consideration a sentencing court should look to for refusing to initiate CRC proceedings." (*People* v. *Granado* (1994) 22 Cal.App.4th 194, 200 [27 Cal.Rptr.2d 286], italics in original.) Of course, there may also be a question of whether the defendant may be addicted or in imminent danger of becoming addicted to narcotics. (*Id.*, at p. 202, fn. 7.)

In *People* v. *Granado*, *supra*, 22 Cal.App.4th at pages 201-202, the Court of Appeal held that although the statute does not so require, when a sentencing court has considered and rejected the possibility of ordering initiation of civil commitment proceedings under the statute, it must give a statement of reasons for its decision.

In the present case defendant requested that he be considered for a CRC program. He submitted two letters from the D.E.U.C.E. program, an alcohol and narcotic recovery program, indicating he was currently an active member and participant in the program. At his sentencing hearing defendant also

made a lengthy statement documenting his long history of alcohol and drug abuse. The prosecutor opposed CRC commitment on the ground that defendant's statement to the court was a manipulation of the truth, he had engaged in a continuous course of criminal conduct since 1980, he had denied drug and alcohol abuse in this bail study, and that his probation report indicated he had tested clean, indicating no drug use for a substantial period of time. When the court announced sentence the following colloquy occurred:

"[DEFENSE COUNSEL]: Your Honor, is there any ruling on the request for CRC commitment?

"THE COURT: I have not granted that request. It is without prejudice to you making a subsequent application if you wish. [¶] I have, and so the record is clear in that regard, I have felt that the matter in terms of additional counseling for Mr. McLemore that he may need that []—that's why I recommended that the Department of Corrections allow him to participate in programs having a [sic] alcohol and drug abuse component in them. . . .

"THE DEFENDANT: In the state prison, Your Honor, there's not too many substance abuse courses allowed to prison inmates who are a level three, Your Honor. That's my—why I was asking for CRC because if you are over a level three, behind the wall, there is no opportunities [sic] for those classes.

"THE COURT: That may be, that's why I made the recommendation to the Director of Corrections to place you in a program, and that will be a matter between you and the Director, ultimately.

"THE DEFENDANT: Okay. So, the CRC is denied?

"THE COURT: Yes. All right. [¶] Yes, Mr. McLemore?

"THE DEFENDANT: In regards to my—in regards to me being denied CRC, Your Honor, I would like to know in what—regards to what—why was I denied and I have been on—in the substance abuse program for methadone for two-and-a-half years.

"THE COURT: That wasn't brought to my attention.

"THE DEFENDANT: Yes, I was on methadone.

"THE COURT: You haven't brought to my attention that you are on methadone.

"THE DEFENDANT: I told my—

"THE COURT: You just discussed it at length right today and you didn't tell me that, but leaving that aside . . . it doesn't necessarily follow that I am going to send you to the CRC program.

"THE DEFENDANT: I understand, Your Honor, I just bring it to the attention because that's the program she was taking me to, the methadone program, Your Honor.

"THE COURT: Then are you now on methadone in the jail?

"THE DEFENDANT: I have been off the methadone. Since I have been in the jail, I have been off the methadone.

"THE COURT: That's my understanding was you have been not been on methadone since you have been in the jail?

"THE DEFENDANT: They detox me.

"THE COURT: You have been off methadone since, at least, October.

"THE DEFENDANT: I see what's you're saying.

"THE COURT: That's my understanding.

"THE DEFENDANT: That's when I got off, Your Honor. They take you off when you come to jail.

"THE COURT: That's right.

"THE DEFENDANT: So my motion for CRC was denied?

"THE COURT: Um-hum."

 It is not entirely clear from the record that the court stated its reasons for failing to initiate civil commitment proceedings. Given the above quoted colloquy, the court may have agreed with the prosecutor that defendant had denied drug addiction in his bail hearing, had tested clean and was not addicted.

Moreover, although the court did not so state, it is evident the court believed defendant had an extensive criminal background. In denying probation the court stated: "Mr. McLemore was convicted on July 17th, 1992, in the Contra Costa County Superior Court, of the crime of possession of a controlled substance, and that renders him completely ineligible for probation pursuant to Penal Code (*sic*) Section 11370(a). [¶] . . . [¶] Secondly, he

was also found to have committed at least two prior—to have at least two prior felony convictions. In point of fact, the Court found that he had been convicted of five prior felony convictions and therefore was ineligible for probation pursuant to the Penal Code Section 12023(e)(4). [¶] . . . [¶] I have considered the criteria set forth in rule 413 to determine whether this limitation could be overcome if he were otherwise eligible, and I can not find that, or any basis for overcoming the limitation given his prior record and extensive criminal record, and given the fact that the current offense is more serious than the one which is the cause of the limitation. [¶] . . . [¶] Even if, however, it were that he could overcome that, the ineligibility probation and that limitation, I would not grant probation in this case, given his extensive criminal record and given his performance while on parole and on probation."

Although it was error for the court to deny the initiation of civil commitment proceedings without stating the reasons for its decision, the record before us indicates the error was not prejudicial. While it is not clear whether the court considered defendant addicted or in imminent danger of becoming addicted, it is obvious it believed defendant's extensive criminal background precluded him from CRC commitment. Since the record discloses facts which adequately support the reasons for denying the initiation of CRC commitment proceedings, the sentencing court's choice is presumed to be based on those facts. (*People* v. *Granado, supra,* 22 Cal.App.4th at p. 203; *People* v. *Golliver* (1990) 219 Cal.App.3d 1612, 1620 [269 Cal.Rptr. 191].)

## DISPOSITION

The judgment is affirmed.

Merrill, J., and Chin, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 16, 1994.