[No. C025094. Third Dist. Jan. 28, 1998.]

In re WILLIAM RHODES on Habeas Corpus.
In re BRYANT COLTON on Habeas Corpus.

**COUNSEL**

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Peter Siggins, Assistant Attorney General, Joan W. Cavanagh and Lisa M. Menze, Deputy Attorneys General, for Appellant.

Catherine Campbell, under appointment by the Court of Appeal, for Respondents.

**OPINION**

**PUGLIA, P. J.**—The People appeal from the order of the superior court granting the respective petitions for writ of habeas corpus of state prisoners William Rhodes and Bryant Colton (collectively petitioners). The superior court concluded the Director of the Department of Corrections (Director) had abused his discretion in failing to assign each petitioner to a prison "nearest the prisoner's home." (Pen. Code, § 5068.)

We shall conclude that the Director did not abuse his discretion in exercising his authority to designate the prison in which petitioners were to

be housed. Accordingly, we shall reverse with directions to the superior court to deny both petitions.

Penal Code section 5068 (section 5068) states in relevant part: "The Director of Corrections shall cause each person who is newly committed to a state prison to be examined and studied. This includes the investigation of all pertinent circumstances of the person's life such as the existence of any strong community and family ties, the maintenance of which may aid in the person's rehabilitation, and the antecedents of the violation of law because of which he or she has been committed to prison. Any person may be reexamined to determine whether existing orders and dispositions should be modified or continued in force.

"Upon the basis of the examination and study, the Director of Corrections shall classify prisoners; and when reasonable, the Director shall assign a prisoner to the institution of the appropriate security level and gender population nearest the prisoner's home, unless other classification factors make such a placement unreasonable.

"As used in this section, 'unreasonable' includes consideration of the safety of the prisoner and the institution, the length of term, and the availability of institutional programs and housing.

"As used in this section, 'prisoner's home' means a place where the prisoner's spouse, parents, or children reside at the time of commitment."

The uncodified preamble to section 5068 contains a statement of legislative findings and intent: "(a) The Legislature finds and declares that the maintenance of family ties and the development of familial relationships is crucial to rehabilitation efforts. It is the intent of the Legislature to facilitate the maintenance and development of family relationships by incarcerating inmates in the institution closest to the inmate's home, whenever practical and when requested by the inmate.

"(b) The Legislature further finds and declares that the ability of the Department of Corrections to accommodate prisoner requests to be placed in an institution nearest the prisoner's home is limited by the number of prisons located in major metropolitan areas such as southern California. Further growth in prison population and the difficulty in siting prisons in major metropolitan areas will compound the difficulty in accommodating those requests. The Legislature further finds and declares that the increasing percentage of prisoners with short stays in prison, particularly parole violators, inhibits the ability of the Department of Corrections in accommodating

prisoner's requests for those placements." (Stats. 1989, ch. 1061, § 1, p. 3671.)

Petitioners are incarcerated at High Desert State Prison (HDSP) in Susanville. Each petitioner alleged in his habeas corpus petition that his confinement at HDSP was unlawful in that he was entitled to be assigned to an institution closer to his family, in each case, in Southern California. The superior court issued an order to show cause, directing the respondents in their returns to address whether petitioners were properly housed at HDSP, whether there were available other prisons of comparable security level closer to petitioners' homes to which they could be assigned, and whether there were classification factors which precluded the assignment of petitioners to an institution closer to their homes. After the respondents filed separate returns, the court consolidated the petitions.

A hearing was held at which evidence was received relating to the manner in which the Director examines and classifies inmates and assigns them to an institution. The evidence showed that a classification staff representative (CSR) employed by the Department of Corrections (Department) evaluates inmate placements and transfer requests. In determining inmate placement a CSR considers, among other things, safety of the prisoner, safety of the institution, length of the inmate's term, availability of institutional programs and housing, and any medical and psychiatric conditions of the prisoner. The CSR classifies each inmate according to certain objective factors which include the age of the inmate, whether the inmate was (a) a high school graduate, (b) honorably discharged from the military, (c) gainfully employed at the time of arrest, and (d) married at the time of arrest. A numerical value is assigned to each factor from which a classification score is derived for each inmate.

The inmate is also interviewed by a correctional counselor who inquires as to particular requests and interests of the inmate and recommends a program and custody level based on the inmate's interview, classification score, and case factors. The counselor considers program availability within the Department as well as the location of the inmate's family and the strength of community ties, if any. The counselor makes a recommendation regarding the inmate's custody level to a CSR, who then decides the institution to which the inmate should be assigned.[1]

The evidence disclosed that every prison facility operated by the Department is filled in excess of capacity; that the system, consisting of 32 prisons,

---

[1]Custody levels range from level I, which is at the lowest end of the security scale, to level IV, the highest security level. (See Cal. Code Regs., tit. 15, §§ 3375.1, 3377.)

is filled to 190 percent of capacity; and that, collectively, the 12 prisons in the system which are located in Southern California are filled to 200 percent of capacity. In July 1996, there were approximately 82,000 inmates from Southern California in the state prison system. At that time, the Department had 44,500 beds in the 12 Southern California prisons.

Evidence established that because of the crowded conditions in all state prisons, it is the Director's policy when a new prison is opened to fill it as quickly as possible with a blend of presently incarcerated (mainline) inmates and newly incarcerated inmates. There are two reasons for this policy: First, moving mainline inmates out of an overcrowded facility alleviates overcrowding in that facility, which in turn provides a more secure and stable institutional environment for both inmates and staff; second, filling the new facility with a blend of mainline and newly committed prisoners tends to mitigate security problems in the new institution. Because mainline inmates are accustomed to prison life, their presence tends to minimize the problems of inactivity and limited program availability typical of a new prison. In other words, mainline inmates are better equipped by experience to "do time."

Petitioner Colton has been incarcerated in state prison since 1981, when he was sentenced to a term of 34 years. Since that time, Colton has been assigned to various prisons. In August 1993, at his request, Colton was transferred to the "B" facility at Corcoran State Prison (Corcoran). The "B" facility at Corcoran housed custody level III inmates. He remained there until November 1995, when he was transferred to HDSP.

HDSP is a new prison which opened in October 1995. Simultaneously, the Department deactivated the "B" facility at Corcoran because of cost and security concerns and, in particular, the need to house more level IV inmates at Corcoran.[2] The Department contemplated filling HDSP with a mix of newly incarcerated level III inmates and mainline level III inmates transferred from Corcoran.

In November 1995, Colton requested transfer to California State Prison-Lancaster (CSP-LAC), a facility located in Los Angeles County. The reason for his request was to be near his grandmother, who was terminally ill.

At the time of Colton's request, CSP-LAC was accepting new prisoners. However, because the Department's plan to activate HDSP contemplated transfer there of level III inmates from Corcoran's "B" facility, the Department's list of prisons available to receive transfers was superseded for the

---

[2]Only the "B" facility at Corcoran was converted from level III to level IV housing. Level III inmates are still housed at Corcoran in other parts of the prison.

Corcoran level III transferees.[3] Accordingly, Colton's request for transfer to CSP-LAC was denied and he was transferred to HDSP.

Petitioner Rhodes was committed to the Department pursuant to a September 1995 conviction for which he received a six-year state prison term. When he was initially examined and studied (§ 5068), Rhodes requested assignment to CSP-LAC or, in the alternative, to the Richard J. Donovan (RJD) correctional facility in San Diego. Rhodes has family, including a wife and children, residing in the Los Angeles area.

CSP-LAC was available to receive transfers at the time of Rhodes's request. (RJD was not available.) However, Rhodes was assigned to HDSP because of the Department's need to fill beds at the new institution with a mix of mainline and newly committed prisoners, thus alleviating overcrowding at other state prisons.

In granting the habeas corpus petitions, the superior court concluded there were no classification factors that warranted denial of either petitioner's request to be assigned to an institution near his home. Considering only those classification factors "personal" to each petitioner, the court found none of them warranted a finding by the Director in either case that assignment to an institution in Southern California would be "unreasonable." (§ 5068.) The superior court also found the asserted need to activate and fill a new prison is not a "classification factor" included in section 5068. Accordingly, the trial court concluded the need to fill a new prison could not override the legislative policy favoring assignment of prisoners to facilities nearest their homes, and therefore it would not be "unreasonable" to assign each petitioner to an institution "nearest the prisoner's home." (§ 5068.) ■ We disagree.

Section 5068 recognizes that assignment of a prisoner to an institution near his home may be rendered "unreasonable" by "the availability of institutional . . . housing." The evidence is undisputed the Department must deal with a serious problem of prison overcrowding. The alleviation of overcrowding creates a more secure and stable prison environment for both inmates and staff. Given the fact that every state prison except, perforce, one newly opened, is seriously overcrowded, the Director may deem it unreasonable to transfer an inmate to an overcrowded institution when a new prison accommodating that inmate's security level is available.

---

[3]Each week the Department prepared a "Do's and Don'ts" list of prisons. A prison on the "Do's" list is accepting prisoners that week, while a prison on the "Don'ts" list is not accepting prisoners. Simply because a prison is on the "Do's" list does not mean a prisoner will be able to transfer to that institution. Although a prisoner may be approved for transfer to an institution on the "Do's" list, by the time the paperwork is completed and travel arrangements made, the transferee prison might not have an available bed. The abortive transferee would then either be placed on a waiting list or his approval of transfer canceled.

Because Corcoran's level III "B" facility was being deactivated simultaneously with the opening of HDSP, and because HDSP was the only prison where Corcoran's displaced level III inmates could be moved immediately without aggravating the overcrowding problem, the Director decided to transfer 1,292 level III inmates from Corcoran to HDSP. As a factor to be considered, the imperative to fill a new prison, thereby alleviating overcrowding elsewhere, is subsumed under "the availability of institutional . . . housing." (§ 5068.)

The Director also took into consideration the factors of inmate and institutional safety in his decision to assign petitioners to HDSP. The evidence is undisputed that when a new prison is opened, inmate and institutional safety are best served by filling it with a mix of mainline and newly committed inmates. Transferring mainline prisoners into a newly opened facility serves the salutary purposes of alleviating overcrowding in the institutions from which they are transferred. Moreover, institutional security is thereby fostered because mainline inmates are accustomed to prison routine and are better able to adjust to the inactivity and limited program availability typical in new prisons. And by sending newly committed inmates to a new prison, the Director avoids compounding the overcrowded conditions in older institutions. In filling new prisons with a mix of mainline inmates transferred from overcrowded prisons and newly committed inmates, the Director is following the explicit instructions of section 5068 to take institutional security into account in making housing determinations.

In her brief, counsel for petitioners asserts the superior court made "findings" with respect to each petitioner that the Director "fail[ed] to consider the factors enumerated [in section 5068] and [based his] decision to transfer . . . to [HDSP] solely on [the] need to fill the new prison." A failure even to consider the statutory factors, as alleged by counsel, would of course be an abuse of discretion. However, if such findings were made, they would find no support in the record. Each petitioner attaches to his verified habeas corpus petition the decisions in the administrative appeals denying the requests for transfer. These decisions indicate that petitioners' central files, interviews with the appeals coordinator, and arguments were reviewed and considered. The inference is inescapable that the statutory factors were included in the matters reviewed and considered.

In any event, the superior court did not, as counsel asserts, find that the Director did not consider the statutory factors. In its order granting habeas corpus, the superior court simply stated there was no evidence of any classification factors pertaining to either petitioner that would have made

either of the requested transfers unreasonable; moreover, the only reason given for the denial of transfer was the need to fill a new prison. The court concluded the need to fill a new prison was not a statutory criterion and therefore could not override statutory criteria favoring transfer. As appears, we disagree with the court's conclusion.

In the uncodified preface to section 5068, the Legislature recognizes the Director will be unable to assign every prisoner to a facility close to the prisoner's home. Thus, section 5068 necessarily vests substantial discretion in the Director in assigning prisoners to institutional housing. (See generally, Pen. Code, §§ 5054, 5080; *People* v. *Superior Court* (*Peterson*) 12 Cal.App.4th 16, 23 [14 Cal.Rptr.2d 685]; *People* v. *Lara* (1984) 155 Cal.App.3d 570, 576 [202 Cal.Rptr. 262]; *People* v. *Flower* (1976) 62 Cal.App.3d 904, 913-914 [133 Cal.Rptr. 455].)

In deciding where petitioners were to be housed, the Director took into account all of the relevant factors, those personal to petitioners as well as those pertaining to institutional concerns. It is not for the court to consider de novo or to second-guess or micromanage the Director's decision where to house prisoners. Those decisions are within the discretion of the Director acting under the statute and may be set aside only when discretion is abused. Here, the Director has exercised his discretion within the standards set forth in the statute.

In so concluding, we note petitioners are not without a remedy. Prisoners are reexamined and reclassified annually at which time they can request a transfer to an institution nearer their home. An inmate can seek a transfer at any time by a simple request to his counselor. Of course, the decision whether such a transfer request will be granted remains within the sound discretion of the Director, informed by the factors identified in section 5068.

The judgment (order) is reversed, and the matter is remanded to the trial court with directions to deny both petitions for writ of habeas corpus. The stay previously issued is vacated.

Davis, J., and Nicholson, J., concurred.