Filed 8/2/23  P. v. Williams CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>SHAKIR WILLIAMS,<br><br>Defendant and Appellant. | C096588<br><br>(Super. Ct. No. 21FE020028) |

Defendant appeals a judgment entered after the jury found him guilty of second degree robbery (Pen. Code, § 211)[1] and found true the enhancing allegation that he personally used a firearm.  (§ 12022.53, subd. (b).)  The trial court imposed the upper term for the robbery, resulting in an aggregate prison term of 15 years.  Defendant's challenge on appeal is limited to the trial court's imposition of an aggregated upper term

---

[1]     Undesignated statutory references are to the Penal Code.

1

of five years for the robbery.  He complains:  (1) the trial court's use of aggravating factors found true by the jury was invalid because it constituted an improper dual use of facts in light of the firearm enhancement that was imposed; (2) the trial court failed to consider whether defendant's childhood trauma contributed to the offense under Assembly Bill No. 124 (2021-2022 Reg. Sess.); (3) to the extent these claims were forfeited, this court retains jurisdiction to consider them and his counsel was ineffective for failing to raise them; and (4) substantial evidence does not support the jury's determination that the crime involved great monetary value because defendant took only $295.

Because we agree the trial court erred prejudicially by using defendant's firearm usage for both the firearm enhancement and to enhance his robbery sentence, we do not reach defendant's remaining arguments.  Accordingly, we reverse defendant's sentence and remand for resentencing consistent with this opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

The People's amended complaint charged defendant with one count of second degree robbery (§ 211) and included an enhancing allegation that he had personally used a firearm.  (§ 12022.53, subd. (b).)  The complaint further alleged four aggravating factors for use at sentencing:  (1) the offense "involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness" (Cal. Rules of Court, rule 4.421(a)(1));[2] (2) defendant was "armed with or used a weapon at the time of the commission of the crime" (rule 4.421(a)(2)); (3) the crime "involved an attempted or actual taking or damage of great monetary value" (rule 4.421(a)(9)); and (4) "defendant has engaged in violent conduct that indicates a serious danger to society."  (Rule 4.421(b)(1).)

---

[2]     Undesignated rule references are to the California Rules of Court.

At defendant's jury trial, the victim M.S. testified to being robbed at gunpoint while working the cash register at a discount store the evening of October 13, 2021. M.S. rang up the chips and drink the robber brought to her register, bagged them, and told him the total. Instead of paying, he demanded, " 'Put all the money in the bag.' " M.S. asked defendant if he was serious, and defendant pulled a gun out of the front of his sweatshirt and said, " 'Yes, put all the money in the bag.' " M.S. asked again, " 'For real, are you serious? It's the dollar store.' " The robber looked frustrated and responded, " 'Yes.' " He pulled out the gun again and warned M.S., " 'Put all the money in the bag before somebody gets hurt.' "[3] M.S. denied that the gun was pointed directly at her, but surveillance footage played for the jury reflected the robber removing the gun from the front pouch of his sweatshirt, pointing it in M.S.'s direction, and M.S. then placing her hand on her chest.

The robber became irritated and frustrated, which made M.S. nervous. M.S. felt directly threatened. Nonetheless, M.S. considered the robber "small" and explained she would "[p]robably not" have given him the money if he did not have a gun. M.S. did not scare easily because she grew up in "the ghetto," however, when she realized he might not be joking, she was concerned about the men, women, and children in the store. In light of his threat and the customers in the store, she decided to give him the money.

The robber told M.S. to open the register, and M.S. explained she needed her manager. Defendant told M.S. to input into the register that he had given her five dollars, and she did. The register opened, and she gave him the $295 inside it. M.S. did not remember what the robber looked like, so she did not identify defendant. The robber fled, and she followed him outside, informing her coworkers that she had been robbed. Her coworker A.J. saw the robber get into the passenger seat of a black Toyota Camry

---

[3] M.S. was unsure of the precise wording of this threat, testifying he may had said " 'or somebody is going to get hurt' or '[b]efore somebody gets hurt.' "

that was running and drive away. He provided the license plate number when he called 911.

Detective Nicole Sunseri investigated the robbery. Eventually, she learned of a black 1997 Toyota Camry registered to defendant with a license plate that was one digit different than the witness's report. Detective Sunseri also learned defendant owned a Browning .22-caliber semiautomatic pistol, a gun that matched the unique firearm from the surveillance footage. Sunseri executed a search warrant for defendant's car on December 7, 2021, and found defendant sleeping in the front seat in the parking lot outside his mother's apartment. In the car, deputies found defendant's loaded Browning firearm under the driver's seat, as well as bag of ammunition and clothing matching that worn by the robber in the surveillance video.

All but one of the fingerprints taken from the chips and soda bottle found at the crime scene matched defendant's known prints. This identification was verified through a blind verification process, as well as by rolling and analyzing one of defendant's prints in court.

Defendant testified in his defense and denied that he robbed the store. Defendant regularly shopped there, thus explaining his fingerprints. Further, he sometimes let his friends drive his car, but he denied lending the gun, which he was licensed to carry for his security job, to anyone. The clothes recovered from his car were his, but popular and readily available for purchase.

On cross-examination, the district attorney went through the clothing recovered and surveillance footage from the robbery, obtaining defendant's repeated denials that he was the person in that footage. According to defendant's testimony, he visited the store more than 20 times, but defendant had told Detective Sunseri he never went there. Finally, defendant denied he had lent his car to a friend on the day of the robbery.

Thereafter, the jury found defendant guilty of second degree robbery and found true the enhancing firearm allegation, as well as the aggravating sentencing factors.

4

As reflected in the presentence report, defendant told the probation officer he had been previously diagnosed with depression and anxiety. Defendant also expressed interest in anger management and therapy "due to the trauma he suffered as a child." Specifically, defendant reported he suffered sexual abuse at age five at the hands of a cousin, had watched his childhood home burn down, and had suffered homelessness. Defendant stated that "he only took the case to trial because the initial offer relayed to him was two years (which he said he agreed to take), so he refused to accept any other offers, which reportedly grew higher with each attorney assigned to him." The report identified three of the four aggravating factors found true by the jury,[4] but nonetheless, recommended the trial court impose the low term because this was defendant's first criminal offense. Defendant's lack of a criminal history was the only mitigating factor identified in the probation report.

At the sentencing hearing, the trial court announced it had read and considered the presentencing report. Defense counsel then clarified that although defendant believed he had been offered two years to settle the case in its first week, counsel was not aware of an offer of less than 12 years. The district attorney confirmed defendant had never been offered two years, but did reject an offer of eight years prior to trial. Defendant's attorney did not argue the low term was presumptive by application of Assembly Bill No. 124 (2021-2022 Reg. Sess.) or that the probation report failed to consider other mitigating factors, but rather submitted on that report. The People argued for imposition of the midterm.

In rendering its decision, the trial court noted the only mitigating factor was that defendant had no prior record. The court then highlighted the "mountain" of evidence establishing defendant had robbed the store, despite his denial under oath and found

---

**4** The report did not acknowledge the jury's finding that the crime involved a taking of great monetary value.

defendant was again dishonest when he reported to the probation officer that the only reason he went to trial was because he had been offered two years. In light of this dishonesty, the court discredited defendant's statements to probation about his mental illness, which had not been confirmed. The court did not mention defendant's statements to the probation officer concerning his childhood trauma. The court then weighed defendant's lack of record against his "extremely violent" and "dangerous" conduct, using the jury's findings on rule 4.421(a)(1) and (b)(1) as circumstances in aggravation.[5] Finding the factors in aggravation "far outweigh[ed]" the circumstance in mitigation and because defendant "was not truthful to the jury," the court imposed the upper term of five years for the robbery. Further, the court declined to exercise its discretion strike or reduce the firearm enhancement, imposing an additional 10 years, for a total aggregate term of 15 years.

Defendant timely appealed, and appellate briefing in this matter concluded in May 2023.

DISCUSSION

Defendant argues the trial court erred prejudicially when it used the fact that he was armed with a firearm to both enhance his base term and to impose a firearm enhancement. Recognizing that he forfeited this argument by failing to object (*People v. Scott* (1994) 9 Cal.4th 331, 357, fn. 19), defendant argues we should exercise our discretion to consider the issue and that his counsel was ineffective for failing to raise it below. We will consider the merits in light of defendant's ineffective assistance claim. Having done so, we agree that reversal is required.

Courts "generally cannot use a single fact both to aggravate the base term and to impose an enhancement, nor may it use a fact constituting an element of the offense

---

[5] The trial court expressly did not utilize rule 4.421(a)(2) so as not to commit "dual use of facts."

6

either to aggravate or to enhance a sentence." (*People v. Scott, supra*, 9 Cal.4th at p. 350; § 1170, subd. (b); rule 4.420(g).) On appeal we review the record to determine whether there is substantial evidence in the record to base the aggravating factor on something *other* than the firearm use. (*People v. Garcia* (1995) 32 Cal.App.4th 1756, 1775.) If the trial court could only have based the aggravating factor on the evidence giving rise to the firearm enhancement, then the sentence must be reversed. (*Ibid.*)

Here, the trial court recognized the dual use problem, expressly declining to consider defendant's use of a weapon. (Rule 4.421(a)(2).) Rather, the court relied upon the threat of great bodily harm (rule 4.421(a)(1)) and defendant's danger to society (rule 4.421(b)(1)) to aggravate his sentence. However, we agree with defendant that under the circumstances of this case, only defendant's gun use constituted substantial evidence of these aggravating factors.

Unlike cases in which the defendant made a direct verbal threat to inflict great bodily harm or kill the victim(s) (see, e.g., *People v. Douglas* (1995) 36 Cal.App.4th 1681, 1691-1692; *People v. Edwards* (1981) 117 Cal.App.3d 436, 445-446), here, defendant warned M.S. to put the money in the bag " 'before somebody gets hurt.' " This statement does not implicitly threaten great bodily injury unless one considers that defendant was holding the gun. (See *People v. Calhoun* (1981) 125 Cal.App.3d 731, 733 [improper dual use where the defendant warned, " 'You know this is death,' " while referencing his gun]; see also *People v. Bennett* (1981) 128 Cal.App.3d 354, 359 [robber's grabbing a clerk and customer to prevent them leaving the store, while battery, did not support the threat of great bodily harm enhancement without consideration of the gun].) This is especially true in light of M.S.'s testimony suggesting defendant was not physically imposing; rather, he was "small." Thus, the underlying threat of great bodily injury was dependent on defendant's brandishing a gun. Without other evidence to support this aggravating factor (see *People v. Garcia, supra*, 32 Cal.App.4th at p. 1777 [the defendant's kicking the victim in face independently supported the threat of great

bodily injury aggravating factor]), we must conclude the trial court engaged in impermissible dual use.

Likewise, because defendant did not have a prior record, there is no evidence from which the court could have concluded that he was a danger to society other than his gun use during the robbery.  Accordingly, these two aggravating factors were both based upon defendant's use of a gun and could not be used to aggravate defendant's base term without striking the firearm enhancement.  (§ 1170, subd. (b)(5); rule 4.420(g).)

We further agree with defendant that the trial court's dual use in this case was prejudicial under any standard.  The jury found true four aggravating factors.  (Rule 4.421(a)(1), (a)(2), (a)(9) & (b)(1).)  Three of these factors, as we have explained, are premised upon defendant's use of a gun.  (Rule 4.421(a)(1), (a)(2) & (b)(1).)  The fourth aggravating factor was that the crime involved a loss of great monetary value.  (Rule 4.421(a)(9).)  The trial court did not rely upon this last factor, and with good reason.  Under existing authorities, a loss of $295 does not constitute a loss of great monetary value as a matter of law.  (See, e.g., *People v. Berry* (1981) 117 Cal.App.3d 184, 197 ["[a] loss of $450 is not of great money value"]; CALCRIM No. 3231 [requiring the jury determine a "defendant's conduct was distinctively worse than an ordinary commission of the underlying crime"].)  Accordingly, we cannot use this factor to find the trial court's dual use error harmless, thus requiring reversal for a full resentencing hearing.[6]

---

[6]     In light of this conclusion, we do not reach defendant's remaining arguments complaining of perceived deficiencies in the trial court's exercise of its discretion.

## DISPOSITION

Defendant's sentence is reversed and the matter is remanded for resentencing consistent with this opinion.  In all other respects, the judgment is affirmed.


      KRAUSE      , Acting P. J.


We concur:


   BOULWARE EURIE  , J.


   MESIWALA     , J.

9